**CURTIS PUB. CO. v. FRASER.**

No. 14279.

United States Court of Appeals
Fifth Circuit.

Jan. 5, 1954.

Rehearing Denied Feb. 10, 1954.

Philip H. Strubing, Philadelphia, Pa.,
Edw. McCarthy, Elliott Adams, Jacksonville, Fla., David R. Dunham, St. Augustine, Fla., Wilbur H. Haines, Jr.,
Philadelphia, Pa. (Evans, Bayard &
Frick, Philadelphia, Pa., McCarthy, Lane
& Adams, Jacksonville, Fla., Dunham &
Dunham, St. Augustine, Fla., of counsel), for appellant.

Chester Bedell, Jacksonville, Fla.,
Frank D. Upchurch, St. Augustine, Fla.,
Thos. B. Dowda, Harold E. Merryday,
Palatka, Fla., C. Harris Dittmar, Jacksonville, Fla. (Dowda & Millican, Palatka, Fla., Upchurch, Melton & Upchurch,
St. Augustine, Fla., Bedell & Bedell,
Jacksonville, Fla., of counsel), for appellee.

Before HUTCHESON, Chief Judge,
and HOLMES and BORAH, Circuit
Judges.

HUTCHESON, Chief Judge.

Brought by plaintiff, a resident of St. Augustine, Florida, and operator of certain exhibits there, for which an admission fee is charged, against defendant, Curtis Publishing Company, the publisher of the Saturday Evening Post, and Curtis Circulation Company, the distributor, the suit was for libel.

The claim in general [1] was that in an article, the sixty-third in a series on the Cities of America, which appeared

1. As particularized in paragraphs (a) (b) (h) and (j), the claim was: that said article made false statements with the purpose and effect of ridiculing, defaming and damaging his name and property, bringing him into disrepute and injuring his business, as follows:

"(a) 'Fraser's (meaning plaintiff) Talent is such that he can make anything, however new, look old. The way he does it, he told me with disarming candor, is to blacken his cement and paint his new coquina building blocks with mud. A typical result is an old grist mill with a rustic smithy alongside which he now calls the Inter-American Center. Ten years ago there was nothing there but a vacant lot.

" 'A water wheel connected to an electric motor inside the grist mill goes round and round and somehow attracts tourists to the oldest wooden schoolhouse across the street. The surrey drivers get a lot of fun out of assuring their customers that it is the 'original' wheel.

" 'It is indeed. It was made to order for Fraser (meaning plaintiff) in the 1930's. Although I am assured there is no evidence to support his contention that it was ever used as a school before the Civil War, Fraser (meaning plaintiff) derives a comfortable income from the oldest wooden schoolhouse by charging tourists fifty cents—including the Federal Amusement Tax—to inspect the curios on display inside. * * *' "

"(b) On page 24 of said issue and in said article, and under the words 'St. Augustine' and being the caption thereof 'Its chief industry is still the preservation—and fabrication—of historical landmarks,' is defamatory and false and libelous to plaintiff in this. That it, and the quotations set forth in paragraph (a) above, directly and by inuendo charge plaintiff with the fabrication of historical landmarks, to-wit: 'The oldest wooden school house', and fabrication of an historical landmark by constructing within the last ten years on a vacant lot of a building represented to the public as a structure of historical interest and antiquity, to-wit: the building containing the grist mill and water wheel attached above mentioned in the quotation in paragraph (a) above."

"(h) Referring to the Oldest Wooden Schoolhouse, the statement on page 102 in said issue:

" 'To the right of the doorway as you enter is a framed placard signed Harold L. Ickes, Secretary of the Interior. The placard certifies that "the old schoolhouse * * * has been selected by the Advisory Committee of the Historic American Buildings Survey as possessing exceptional historic * * * interest and as being worthy of the most careful preservation."

" 'The Department of Interior, of course, has no control over what is done with a building that is privately owned. What X. L. Pellicer and the other leaders of the St. Augustine Historical Society object to is not the preservation, nor even the Restoration of the old building—which used to be across the street—but the manner in which Fraser (meaning plaintiff) has doctored up its history.'

"Such statement is untrue in that plaintiff has not in anywise doctored up its history (St. Augustine or the Oldest Wooden Schoolhouse) and is untrue in the implication that plaintiff has moved the Oldest Wooden Schoolhouse in relation to the Street. That such remarks are libelous and defamatory to plaintiff as charging plaintiff with the fabrication of the history of St. Augustine and of a building."

"(j) That in said article on page 1, in the first and second columns, said article makes these statements:

" 'James was referring to such venerable attractions as the Fountain of Youth. Although Ponce DeLeon is said to have sought for it in vain, it was actually Discovered by a refugee from the Klondike named Louella Day McConnell. Mme McConnell, who was none other than Robert W. Service's Lady Who's Known as Lou, was an old harpy with a foghorn voice who had seen literally everything before she descended on St. Augustine. There she chose to support her declining years by erecting a concession on what she declared was the exact spot on which Ponce de Leon first set foot on American soil.

\* \* \* \* \*

" 'The same concession, prettied up is operated today by Walter B. Fraser * * *.' "

in the March 5, 1949 issue, under the title "The Cities of America—St. Augustine", with the sub-title, "Despite the efforts of promoters, our nation's oldest city retains much of its original charm. Its chief industry is still the preservation —and fabrication—of historical landmarks.", the plaintiff was libeled as a faker, fabricator, and foister of frauds as genuine landmarks of historical interest.

The defenses were (1) the denial of the falsity and the defamatory character of the matters quoted from the article in pars. 6(a) to (k) of the complaint; (2) a denial that the article was published without verification or that the defendants knew that the statements were false or intended that they should be published with the purpose of casting ridicule or contempt upon plaintiff, holding plaintiff up as a fraud or faker or discrediting plaintiff's enterprise; (3) a plea that they did not know plaintiff and do not now bear, nor ever have borne, him ill will and that the article

was published in good faith and without malice; (4) that the article constituted only fair comment upon matters of public interest and of historical fact and integrity, and was published without malice; and (5) that the statements of fact contained in the article are substantially true and it was published for good motives.

Upon the issues thus joined, the cause went to trial before the court and jury on March 31, 1952, and continued until April 10, when it was submitted to the jury, and on April 11, the jury returned a verdict against the defendant Curtis Publishing Company, the publisher, for $75,000, but not against the other defendant, Curtis Circulation Company, the distributor of the magazine, and the defendant Curtis Publishing Company has appealed.

Appealing from the judgment entered on the verdict, defendant is here putting forward four grounds of error [2] and insisting that, because thereof, the judg-

"In the first paragraph quoted above the article maliciously troduces the character of Louella Day McConnell, a woman long dead and unable to defend herself, by characterizing her as a 'Harpy', a figure from Greek mythology, defined in dictionaries of the English language as 'One of a group of foul, malign creatures, part woman, part bird, that snatched away the souls of the dead or seized or defiled the food of their victims.' A second definition is: 'A rapacious person'; rapicious being defined as: (1) 'Excessively grasping or covetous; given to seizing or extorting what is coveted. (2) Subsisting on prey; predaceous. (3) Ravenous; voracious.'

"The analogy to the Harpy of Greek mythology is carried out in the article by stating that Mrs. McConnell 'descended' on St. Augustine, as a bird of prey would descend, and that she had a 'Foghorn Voice' characteristic of foul birds of prey. Or, if a metaphorical usage of the term is intended, the article characterizes the said Mrs. McConnell as a rapacious, exceedingly grasping and predaceous person 'Who chose to support her declining years by erecting a concession' through which she extorted money from the public by intentional deception.

"The term 'Concession' as used in this article conveys the impression that the authentic historic site owned by Mrs. McConnell was similar in nature to a booth in a carnival or a side show in a circus."

"The second paragraph, quoted in part above, states that 'the same Concession, prettied up, is operated today by Walter B. Fraser.' Thus, by association of ideas, the article maliciously and intentionally conveys the impression that plaintiff is a harpy, a foul bird of prey, who supports himself by extorting money through deception of the public, which plaintiff alleges is a malicious and intentional defamation of plaintiff's character by inuendo."

2. These are: (1) The denial of defendant's motion for directed verdict; (2) the exclusion of defendant's proffered evidence with respect to the Fountain of Youth; (3) the refusal of defendant's requested instruction No. 5(a); and (4) that the district court erred in instructing the jury with respect to the defense of fair comment, that the burden of proof of actual malice was on the defendant.

ment must be reversed and remanded for trial anew.

In support of its first ground, the appellant in a preliminary statement argues that the fact that the jury found against one defendant and exonerated the other means that the jury found the defamatory statements of fact in the article true, the comment fair, and without actual malice. Urging that in any event the jury's verdict acquitting the Circulation Company necessarily establishes the truth of the facts stated in the article and that the explanation of, the only basis for, the verdict acquitting the Circulation Company, and finding the Publishing Company guilty, must have been that the jury found malice on the part of the Publishing Company, appellant insists that this finding was due to a misconception of the court, imparted to the jury in its charge, (1) as to the proper definition of the good motives which will support the defense of justification, and (2) as to the party who has the burden of proof of actual malice under the defense of fair comment.

Based on this opening, the appellant proceeds to its conclusion, that since plaintiff's own evidence established the truth of the "sting" of the libel and the good motives of defendant in publishing it, the district court should have granted its motion for a directed verdict at the close of plaintiff's case, citing in support, Johnson v. Finance Acceptance Co., 118 Fla. 397, 159 So. 364.

Conceding that some of the older cases often required the literal truth to be proved of each defamatory statement, but insisting that as of today proof of substantial truth, the truth of the "sting" of the libel, is sufficient, appellant, citing Harnett and Thornton, The Truth Hurts, "A Critique of a Defense to Defamation," 35 Va.Law Rev. 425; Laughton v. Crawford, 68 Idaho 578, 201 P.2d 96; and Skrocki v. Stahl, 14 Cal. App. 1, 110 P. 957, argues that it was not necessary for it to prove the truth of each isolated statement. It was sufficient if it proved the body, the substance of the article, that history was being fabricated and that the plaintiff was to that extent a faker.

Admitting that, as shown in appellant's complaint,[3] as stated by the trial judge, the gist or "sting" of the libel in this case is the implication that plaintiff is a faker and his enterprises frauds, appellant concedes that since such an implication would be bound to prejudice plaintiff in his business, if the statements in the article support or raise such an implication, it is libelous per se.[4] Pointing out that the statements in the article which warrant the implication of faker are those about the fabrication and doctoring of history, and arguing that it is those and only those statements which contain an implication of deliberate misrepresentation, appellant insists that it is also true that the charge that plaintiff is a faker and his enterprises frauds is a charge of a general nature and may be justified by proof of any example.

Appellant concedes that plaintiff has contended that the charges in this case are specific, not general, that the state-

---

3. "(k) * * * *The article in its entirety is defamatory and libelous to plaintiff in that plaintiff as signaled out by name and represented as a faker and the enterprises in which plaintiff is interested are identified by name and plaintiff's connection therewith given and such enterprises are represented as frauds foisted by plaintiff upon the public as genuine landmarks of historical interest, whereas on the other hand, every place of interest, historical or otherwise, mentioned or referred to in said article is recognized as genuine* and treated as such; that all of plaintiff's efforts and aims mentioned and discussed in said article are described as being made with the intent to deceive and to humbug the public; whereas the efforts of all other persons now living in St. Augustine are recognized and represented to be honest in character and laudable in purpose." (Emphasis supplied.)

4. Caldwell v. Crowell-Collier Pub., 5 Cir., 161 F.2d 333; Hartley & Parker v. Copeland, Fla., 51 So.2d 789.

ments about fabricating and doctoring history refer only to the oldest wooden school house, and that the defendant was required in order to prove the truth of the libel to establish that the history of that exhibit has been fabricated and doctored by plaintiff, that, indeed that is the theory upon which plaintiff successfully objected to defendant's proffer of evidence that the Fountain of Youth is a fabricated historical landmark.

Appellant, accepting this challenge, then points out what it argues are the undisputed facts as to this doctoring and fabrication, and concludes that these facts show that the charge was true as matter of law. Proceeding then to its evidence, establishing the second point of its defense under Florida law, that its motives in publishing the statements were good, and pointing out that under Florida law good motives relate solely to the motives of the publisher, appellant argues that a Florida defendant who shows by the admission of the plaintiff, as was done here, that the publication was made without personal spite or ill will, has established good motives. In addition to this concession, plaintiff proved by the deposition of Ben Hibbs, the editor of the Post, that the motive which induced the publication of the article was to obtain and publish an interesting picture of a city, written truthfully and with the interest of the public in mind.

Of plaintiff's contention that Hibbs' conduct showed that he acted with a reckless indifference to the injury that would be done plaintiff by the article and that such a reckless indifference is the equivalent, or will support a finding, of bad motive, appellant replies that this is not so and that the case of Corrigan v. Bobbs-Merrill Co., 228 N.Y. 58, 126 N.E. 260, on which the district court relied for refusing its motion for a directed verdict, is not in point.

On the basis of these assumptions and contentions, appellant argues not that the article was not defamatory, but that the undisputed proof showed that the statements made in it were true and that the publication was made with good motives.

Appellee, contesting these positions, insists that the appellant cannot now urge its present theory, that the "sting" of the libel was the matter under inquiry, as a ground for its motion for a directed verdict, because this was not made a specific ground below for a directed verdict, and it cannot be first made here. He also urges that appellant's contention, that the jury's finding the Circulation Company not guilty established the truth of the defamatory statements, is without any basis in law or in fact. He points out that there is no inconsistency here of the kind which can be looked to in testing a verdict such as there was in Dixie Ohio Express v. Poston, 5 Cir., 170 F.2d 446, where the master's responsibility was predicated on the wrongful or negligent act of its servant and the servant was discharged and the master held, for in this case the Publishing Company was itself the actor.

He also cites Florida cases such as Jackson v. Florida Weathermakers, Fla., 55 So.2d 575, holding that a co-defendant in a tort action cannot complain of a verdict rendered in the other's favor.

He insists, too, that defendant's burden was to prove the truth of each of the matters charged as libelous and not some so-called "sting" of the libel. Under this head he argues that appellant's reliance upon cases in other jurisdictions in support of its "sting" theory will not do. Citing Jones v. Townsend's Adm'x, 21 Fla. 431, and urging upon us that it was defendant's burden in respect of the issue of truth to prove not only that each statement made in the article was true but that each inuendo properly charged by the plaintiff in respect of them was true, appellee insists: that it was defendant's burden to prove its defense of truth as to every portion of the article complained of; that it certainly failed to do this as matter of law; that indeed it failed to do it as matter of fact.

Finally, he insists that defendant failed to discharge its burden in respect to

proving as matter of law even the so-called "sting" of the libel, indeed it did not prove even as matter of fact that plaintiff was a faker in any particular.

Upon the second ground of appellant's argument, that it proved good motives as a matter of law, appellee scouts as completely unfounded appellant's dictum, based upon Massachusetts law, that a Florida defendant who shows that a publication was made without spite or ill will has established good motives. He points out that the statute, under consideration in the cases appellant cites from Massachusetts, provides that "the truth shall be a justification unless actual malice is proved", G.L.(Ter.Ed.) c. 231, § 92, and that the statute placing the burden of proof on plaintiff is far different from the Florida Constitution which places the burden of proof on the defendant by providing that it must appear that the matter charged as libelous is true and was published for good motives. So pointing, appellee insists that it cannot any more be said as matter of law that an act was done with good motives when there is evidence showing or tending to show that it was done with reckless indifference to, or total and wanton disregard of, the rights of others, than it could be said where there was evidence that the act was done with spite or ill will, that, in short, good motives cannot coexist with malice either actual or implied.

Proceeding then to an analysis of the evidence, appellee concludes that the motions for directed verdict were properly denied.

■ We cannot agree with appellee that, because of defendant's failure to elaborate in connection with its motion for an instructed verdict, the theory on which it presses for a reversal and rendition, we may not consider that theory here. We think it plain that this contention of appellant was implied if not expressed in the whole of the trial and was clearly understood by all concerned in it, including the judge.

■ We do agree with appellee, though, that the record does not support appellant's insistence: that as matter of law no case for libel was made out; that it should have had an instructed verdict; and that, because it did not, the judgment should be here reversed and rendered.

■ We come then to appellant's claim that the judgment should be reversed and the cause remanded for trial anew because the court erred in excluding defendant's evidence that the Fountain of Youth is a fabricated historical landmark and that plaintiff knowingly advances false claims and pretenses for its antiquity.

Upon a careful consideration of the briefs and an examination of the record,[5] we find ourselves in agreement with the

5. Plaintiff's complaint dealt at great length with what he alleged was the libelous attack of the article on the Fountain of Youth, note 1, supra. The article itself, devoted more space, approximately 109 lines, to this exhibit than it devoted to the Oldest Wooden School-House. "The Fountain of Youth," said the article, "is one of the venerable attractions Henry James referred to as humbug. It was discovered by one Louella Day McConnell, an unscrupulous woman who made spurious claims as to its history and antiquity, it is now operated by plaintiff who has built a ruin around it and has senoritas on the premises to tell the customers that a drink of the water will make one grow ten years younger." In short the article pointed out the Fountain of Youth as one of the fabri-

cated historical landmarks referred to in the sub-title and one of the faked and fabricated enterprises operated by plaintiff.

Defendant, therefore, made a full offer of proof with respect to the truth of the facts stated in respect of the Fountain of Youth, covering pages 706 to 749 of the record, claiming that this proffered evidence would have established that plaintiff's Fountain of Youth is a completely fabricated historical landmark, as charged in the article, and that plaintiff knowingly advances fake claims as to it for his own profit. Before receiving the formal offer of the proof, the court heard arguments on the admissibility of the Fountain of Youth evidence, covering more than thirty pages of the record, 591 to 623.

appellant that this is so. We find, too, that the error in the exclusion was accentuated and made more greatly prejudicial by the action of the court (1) in allowing the plaintiff to argue to the jury that the statements made in the article with regard to the Fountain of Youth themselves showed malice, though he had denied defendant the right to show that the statements made were true, and (2) in breaking into the defendant's argument in regard to the Fountain of

In opposition to the proffer plaintiff argued: that he was no longer claiming the Fountain of Youth allegations as libelous; that his complaint was based solely upon specific statements in the article about the Old Schoolhouse; that where a libelous charge is specific, as here, the defendant can justify the charge only by proving the truth of each specified instance claimed as libelous; and that since statements in the article about the Fountain of Youth were no longer insisted upon by him as libelous, the truth vel non of statements about it was not relevant to the issues before the court.

The court ruled that evidence concerning the Fountain of Youth, historical or otherwise, should be excluded, and sustained plaintiff's objection to defendant's proffered testimony and exhibits. In addition, after both parties had rested and the court was discussing with counsel the charge to be given, the court permitted counsel for plaintiff to state that he wished to withdraw the claim as to par. 6(j) of the complaint, that that portion of the article was libelous per se, but with the understanding *"that that portion of the article still remains in the case and like all other parts of it is to be considered by the jury in arriving at the meaning and intention and matter of malice"*. (Emphasis supplied.)

"The Court: It is still therefor their consideration to the same extent that the balance of the article is?

"Mr. Bedell: Yes.

"The Court: That's right.

"Mr. Bedell: That is my understanding, but we would like to withdraw that part of the complaint.

"Mr. McCarthy: Will any announcement be made to the jury? I think the withdrawal ought to be made in the presence of the jury.

"Mr. Bedell: Well, whatever announcement is to be made, I think it ought to be explained to the jury that it remains in the article and that it is like the balance of it. It is subject to be commented on and be referred to.

"The Court: Yes."

Later Mr. Bedell stated (record page 834): "We want to withdraw it and not have the question left in the record, but we certainly expect to refer to it, and the law is, as I understand it, that the jury *can find the existence of actual malice* from the article itself, and that is one of the matters we expect to refer to in the argument, and I don't want to have the jury consider that we have consented that that is an appropriate remark about the Senator." (Emphasis supplied.)

Thereafter the court, after stating to the jury: "Now before the commencement of the argument, I want to bring one matter to your attention", instructed it substantially as follows:

You will recall that when the complaint was read to you at the commencement of the trial, and it has been referred to during the trial, one of the portions of the article complained of as libelous was par. 6(j) the "Fountain of Youth".

After stating "Plaintiff has withdrawn that portion of the complaint" charging that that particular part of the article is injurious to plaintiff, he went on to say:

"I want you to understand, of course, that that portion of the article is still before you for your consideration, along with the rest of the article. The whole article has been delivered to you and has been read to you, with respect to the article, and that portion of the article is still for your consideration along with the balance of it that was not charged as being—specifically charged as being libelous; as an aid to you in interpreting the meaning of the parts that are charged to be libelous but it is no longer complained by the plaintiff that that part is libelous of him. And that issue is withdrawn from your consideration, the plaintiff having withdrawn that portion of the complaint."

After counsel for defendant (record p. 931 et seq.) had argued that by withdrawing the matter the plaintiff admitted the Fountain of Youth was a fabrication, stating, "Now what have they got to talk about in this case with the Fountain of Youth out of it, which is an admitted fabrication?", and again, on page 943, "Since all this Fountain of Youth stuff has been taken out of the case, what they have got left is just an empty shell of a case and that is all they have got to talk about. They have to quibble about stuff

Youth to instruct the jury contrary to the tenor of that argument.

The inevitable result of these rulings and actions has been not only to deprive the defendant of the right to defend itself on the Fountain of Youth charge, but on the charge of libel as a whole in such way and under such circumstances as to greatly aggravate the error and wrong. This is so, first, because the defendant was not allowed to show the truth of the statements it had made, and second, because when, without having been instructed by the court that he could not do so, the defendant's counsel argued that the plaintiff had dismissed his claim of libel as to the Fountain of Youth, and this must be taken as a confession that the statements were not libelous, he was confronted with an instruction by the court that the dismissal should not be so construed, and with a reference to the Fountain of Youth charges in plaintiff's closing argument as showing that the defendant had been reckless and grossly slanderous in making them, and as furnishing a basis for a verdict against defendant.

As to ground three and four, that the court erred in refusing appellant's requested charge 5(a) and in charging the jury that the burden was on defendant to prove the absence of malice under its fair comment defense, appellee, opposing these grounds of error, points out that defendant's charge 5(a) was neither specifically addressed, not in any way limited to the issue of fair comment, but was general. So pointing, he insists that it was erroneous in that it required proof by plaintiff of actual malice or ill will in order for plaintiff to recover when the law is that except in connection with the issue of fair comment and except as a

like that"; the court announced a recess in the argument and, upon the request of plaintiff's counsel, read the following to the jury:

"Now, ladies and gentlemen, my view of this matter as to plaintiff's withdrawal of this portion of the complaint dealing with the Fountain of Youth, 6(j), about which I spoke to you yesterday just prior to the commencing of the argument, that is not any admission that the Fountain of Youth is a fabrication. There is no evidence either way in this case on the subject of the Fountain of Youth. *It shouldn't be considered by you in your consideration of the case.* The withdrawal of that portion of the complaint has only the effect of putting him in the position of no longer complaining with respect to the allegations that he has now withdrawn. He is not complaining about that portion of the article. He is just withdrawing it from the complaint. He is not, of course, by this withdrawal, admitting that he fabricated the Fountain of Youth or that anybody else fabricated the Fountain of Youth. This is my view of the effect of these pleadings. * * *" (Emphasis supplied.)

"And I will show the defendant's objections and exceptions to the ruling of the court. I think the record should show that. I think that is contrary to the defendant's view of the matter."

Mr. McCarthy: "Your Honor, I appreciate your making the announcement because it gives me the opportunity to straighten out myself with the jury."

Defendant's counsel, thereby confronted with the embarrassing requirement of having to retract the statements which he had made at the outset of the argument that the plaintiff necessarily admits that the Fountain of Youth is a fabrication and then placed in the position of having first been deprived of his evidence that the Fountain of Youth statements in the article were true and then in addition having his argument corrected in respect of his statement that the act of the plaintiff in dismissing the paragraph from his claim of libel was a confession of fabrication, was compelled to argue the best he could that the article on its face showed its truth.

When, in his turn, plaintiff's counsel addressed the jury in the final argument, though he began by saying, at page 995 of the record, " 'Barnum'—that poor lady, Louella Day McConnell. The Fountain of Youth is not in this case; there are no statements made in there about Senator Fraser and the Fountain of Youth"; wound up by saying, "It doesn't say anything about Fraser without associating him with the infamous villification of this dead woman. You talk about skulduggery!" and then proceeded to argue as though the falsity of the statement was admitted to be true simply because the defendant, who had been prevented from doing so, had not proved the truth of the charges it made.

basis for punitive damages it was not necessary to plaintiff's recovery that he prove actual malice at all.

We agree with appellee that in its precise wording, the charge was incorrect and should not have been given as requested. The record, however, shows, beginning at page 850 and going down through page 856,[6] that the court fully understood that appellant was asking this charge in connection with his defense of fair comment and that, though one of plaintiff's counsel agreed with the defendant that on that issue the burden of proving malice was on the plaintiff, the court refused to go along with the concession and placed the burden on the issue of malice in connection with the defense of fair comment on the defendant.

The fact that the court and the plaintiff understood clearly what the defendant was asking makes the refusal of the court to give a correct charge on the fair comment defense and the incorrect instruction that he gave on it in his main charge error of which the defendant may complain as prejudicial.

Because of the errors found to be prejudicial in connection with the Fountain of Youth issue and in connection with the defense of fair comment, the judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

---

6. "Mr. Strubing, for defendant:

"Judge, our position as to malice, the burden is on the plaintiff.

"The Court: Well, it is about that phase of it. But, when you come to this fair comment, it seems to me it's a burden on you to show that it was made maliciously.

\* \* \* \* \*

"Mr. Merryday, for plaintiff: What Mr. Strubing is talking about is, he can make criticism as long as he comments about opinions and what-not. As long as it is comments and not a misstatement of fact. Because that—when he makes out a prima facie case by proof of fair comment, he overthrows the presumption, or equals the presumption.

"Mr. Strubing: If you don't present any further evidence, I get a verdict."

\* \* \* \* \*

"Mr. McCarthy, for defendant: Now, Your Honor, we still reserve on the record, our objection—

"The Court. To my failure to give it in the way it is requested?

"Mr. McCarthy: No, not that, Your Honor. Our objection on the record, to put the burden of proof of the absence of express malice is on the defendant. When there is a prima facie case of fair comment.

\* \* \* \* \*

"The Court: That gives him the burden.

"Mr. McCarthy: That throws the burden back on us, which we still object to, but, it meets your objection, it seems to me.

"Mr. Merryday: I don't want to be misunderstood on that. The way I understand that rule is this: On that matter of fair comment the burden is upon you to make out a prima facie case of proof of a defense. And when you do that, then you overcome the presumption of malice that arises from a publication of words that are actually per se. We would then have to put on some evidence of malice to overcome, or there would have to be some evidence of malice in the case to overcome the proof that you put on that tended to establish the the truth of your defense prima facie \* \* \*.

\* \* \* \* \*

"The Court: He is on your side on this thing. But I will tell this jury on this defense of fair comment, that you have the burden of showing it was fair comment, that it was an expression of an opinion and not a material misrepresentation of fact, and you have a burden of showing it wasn't done out of actual malice. That is what all this adds up to, and that is what I will tell them. I have you on this side of the table, but I am still ruling against you.

\* \* \* \* \*

"The Court: I am willing to stand on this. The defense of fair comment is your defense and the burden of proving it was not done out of actual malice. I am willing to stand on it until I am corrected.

"Mr. Merryday: I think you are correct on that.

"The Court: I don't see how you can give the plaintiff a burden as to part of your defense."