[Civ. No. 733.   Third Appellate District.—July 30, 1910.]

WALTER SKROCKI, Appellant, v. H. F. STAHL and F. J. McGETTIGAN, Respondents.

LIBEL PER SE—PUBLISHING DEFAMATORY REMARK ON ASSASSINATION OF PRESIDENT—DAMAGES—EXEMPLARY DAMAGES WAIVED.—The publication by the defendants of a remark imputed to plaintiff on the assassination of President McKinley, that "he ought to be killed," contains language which is libelous *per se.* It is such a defamation as would manifestly expose the plaintiff "to public hatred, contempt or ridicule," and unless shown to be true, would entitle the plaintiff to whatever actual damages he may have suffered thereby, it being conceded by plaintiff that there was "no malice in fact" warranting exemplary or punitive damages.

ID.—DEFENSE—TRUTH OF CHARGE—SUPPORT OF VERDICT.—The truth of the charge is a complete defense to the action for libel; and where, at the trial, there was substantial evidence that the plaintiff used the language attributed to him in the publication, the verdict for defendants will not be disturbed upon appeal.

ID.—ADDITIONAL FACT PUBLISHED—DEFAMATION OF DECEASED BROTHER —CRIMINAL LIBEL—IMMATERIAL FAILURE OF PROOF.—The publication of an additional defamatory statement that the deceased brother of plaintiff was an anarchist, who committed suicide for reasons stated, while it may constitute ground for criminal libel, as a malicious defamation "tending to blacken the memory of one who is dead," it could constitute no cause for a civil action in favor of the plaintiff, and the failure to prove its truth as against the plaintiff is entirely immaterial.

14 Cal. App.—1          (1)

ID.—EVIDENCE—POLITICAL BELIEF OF BROTHER.—It was not error to refuse to allow the plaintiff to testify to the political belief of his brother, that fact being immaterial to the rights of plaintiff.

ID.—ADDITIONAL PUBLICATION AS TO PLAINTIFF'S ARREST—FAILURE OF PROOF NOT PREJUDICIAL.—The failure of defendants to prove the additional fact published, that plaintiff was arrested and placed in jail for the remark made, was without prejudice to any of his substantial rights.

ID.—RULE AS TO EXTENT OF JUSTIFICATION—GIST OR STING OF CHARGE. The rule established in this state, and according with right reason, is that defendants charged with libel are not required to justify every word of the defamatory matter. It was sufficient if the gist or sting of the charge here made was justified, and immaterial variances and defects of proof upon minor matters are to be disregarded if the substance of the charge was justified.

ID.—INSTRUCTION AS TO BURDEN OF PROOF AND DAMAGES—PLAINTIFF'S FAILURE TO REQUEST—PRESUMED FINDING.—Where the court instructed the jury that the burden of proof was upon the defendants to establish by a preponderance of evidence the truth of the material portion of the publication, and that, if they believed that the publication complained of had damaged the plaintiff, it was their duty to assess the damages not exceeding the sum claimed in the complaint, and where plaintiff failed to request an instruction as to whether the arrest was a material part of the publication, a finding is presumed from the verdict for defendants that plaintiff was not perceptibly damaged by the publication as to the arrest.

ID.—EVIDENCE—CROSS-EXAMINATION OF PLAINTIFF—SOCIALIST—HARMLESS RULING.—The overruling of an objection asked of the plaintiff on cross-examination whether he was a socialist is harmless, as the answer could not prejudice him.

ID.—EXCLUSION OF STATEMENTS BY OTHER PERSONS TO PLAINTIFF AFTER PUBLICATION OF LIBEL.—The court properly refused to allow testimony as to what was said to plaintiff by other persons after the publication of the libel. Such evidence is not admissible to show the mental suffering of the plaintiff, or to show that the libelous words were understood by those who read them to refer to the plaintiff, where no such issue was raised by the pleadings, and there is no controversy or uncertainty as to the person to whom the language referred.

ID.—CRITICISED INSTRUCTIONS—PRESUMED REQUEST.—Assuming that instructions criticised by the appellant were objectionable, it must be presumed, in the absence of anything in the record to the contrary, that the criticised instructions were given at appellant's request.

ID.—CORRECTNESS OF CHARGE.—When the instructions are considered together, it is held that there is no error therein, and that the law is stated as favorably to the plaintiff as he had any right to expect.

ID.—INSTRUCTION AS TO SEVERAL LIABILITY OF DEFENDANTS—PLAINTIFF NOT PREJUDICED.—An instruction that the jury might find a verdict against one of the defendants, if he was liable for the publication, although they might believe the other had no connection with it, was not prejudicial to the appellant, although the defendants were jointly charged.

ID.—LIBEL ACT—CONSTITUTIONALITY—BOND—COUNSEL FEES.—The libel act requiring the plaintiff to give a bond to secure the costs and counsel fees in case of recovery by defendant, and allowing the same counsel fees to the prevailing party, plaintiff or defendant, is subject to no constitutional objection. The objection that it is special legislation in violation of the present constitution is not tenable, since the libel act was adopted before the present constitution went into effect.

APPEAL from a judgment of the Superior Court of Solano County. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

Austin Lewis, and Robert M. Royce, for Appellant.

Theodore A. Bell, for Respondents.

BURNETT, J.—The action, being for libel, was tried before a jury, and the general verdict was in favor of the defendants. The alleged defamatory matter was published in the "Vallejo Evening News," a daily newspaper, of which the defendants are the owners and publishers, according to the undenied allegation of the complaint. The article complained of stated that a brother of plaintiff had committed suicide, leaving a letter setting forth the racetrack and slot-machines as the reasons for ending his life. The tragic manner of his self-destruction is graphically described and the article proceeds in the following strain, which is the gist of the offending: "Skrocki was an anarchist and a brother of Walter Skrocki, who, when President McKinley was assassinated remarked to a fellow-workman on Mare Island, 'He ought to be killed.' He was placed under arrest and held at the city jail, but the complainant refusing to press the charge, the prisoner was released."

It is denied in the answer that plaintiff was damaged to any extent, and by way of justification it is alleged that the statement as to plaintiff's declaration in regard to President

McKinley was and is true, "and as a matter of fact the plaintiff did make said remark at the time' and place and under the circumstances alleged." In mitigation of any damages to which plaintiff might appear to be entitled, it is set out in the answer that the matter of which complaint is made was reported to the defendants by W. T. Stanford, chief of police of the city of Vallejo, within twenty-four hours prior to the publication of the same, and that defendants at the time of the publication believed all things therein stated to be true, and "the same were published by the defendants as matters of current public news."

The law of libel has been so frequently considered and clearly announced by the courts and text-writers that scarcely any feature of it is involved in doubt, and it may be said that little difficulty can be experienced here in the application of well-established principles to the facts of the case.

Preliminarily, we may assert, without further consideration, that it cannot be disputed and, indeed, is not, that the published article contains language which is libelous *per se.* It is such a defamation as would manifestly expose plaintiff "to public hatred, contempt or ridicule," and, unless shown to be true, would entitle him to whatever actual damage he may have suffered thereby, and, it may be said, no claim was made to exemplary or punitive damages, the plaintiff contending that defendants were chargeable with malice "in law" but acquitting them of any "malice in fact."

At the trial there was substantial evidence that the plaintiff used the language attributed to him in the publication, and we may, therefore, as to this feature of the alleged libel, base the affirmation of the judgment upon the ground that the justification of defendants, shown to the satisfaction of the jury by the testimony of a witness, is not assailable on appeal, since it is admitted that the proof of the truth of the charge is a complete defense.

It was not shown, however, that plaintiff's brother was an anarchist or that plaintiff himself was placed under arrest or held at the jail. The inquiry is thus presented whether those considerations affect the validity of the verdict and judgment.

As to the first, the failure to justify the publication seems entirely immaterial, since the allegation in the complaint does not constitute the basis for a cause of action in favor of plain-

tiff. "A malicious defamation . . . tending to blacken the
memory of one who is dead" is indeed a libel, and may subject
one to criminal prosecution, but the statute provides that in
a civil action for damages "it is not necessary to state in the
complaint any extrinsic facts for the purpose of showing the
application to the plaintiff of the defamatory matter out of
which the cause of action arose; but it is sufficient to state,
generally, that the same was published or spoken concerning
the plaintiff; and if such allegation be controverted, the plain-
tiff must establish, on the trial, that it was so published or
spoken." It is manifest that the charge concerning the
brother of plaintiff was not published concerning the latter,
and hence the requirement of the statute in this regard could
not be complied with. As a matter of sound public policy,
the malicious defamation of the memory of the dead is con-
demned as an affront to the general sentiments of morality
and decency, and the interests of society demand its pun-
ishment through the criminal courts, but the law does not
contemplate the offense as causing any special damage to an-
other individual, though related to the deceased, and, there-
fore, it cannot be made the basis for recovery in a civil action.
This, probably, is a necessary incident to the theory of the
social relations entertained here, where one is supposed to
stand or fall upon his own merits and where success or failure
is entirely independent of the accidents of rank or family
connection. It necessarily follows that, theoretically at least,
no man's success can be aided or retarded by the character
of his relative. The defamation of such character, therefore,
however grievous or disturbing, can afford no injury that can
be measured by a pecuniary standard. At any rate, under
the statute, appellant cannot complain because the defend-
ants offered no proof of the truth of their accusation that
plaintiff's brother was an anarchist.

And, since the matter is entirely immaterial, of course the
court committed no error in sustaining an objection to the
question propounded to plaintiff concerning his brother's
political belief.

In relation to the failure to prove that plaintiff was ar-
rested and detained in jail, it is entirely clear that this was
without prejudice to any of his substantial rights. The rule
established here by the authorities, and manifestly based on

right reason, is that the defendants were not required to justify every word of the defamatory matter. It was sufficient if the gist or sting of the libelous charge was justified, and immaterial variances and defects of proof upon minor matters are to be disregarded if the substance of the charge be justified. (*Hearne* v. *De Young*, 119 Cal. 670, [52 Pac. 150, 499].) The sting of the charge here is that the plaintiff said that President McKinley "ought to have been killed." The clear implication is that plaintiff was a man of abandoned character, opposed to the reign of law and order, and favoring the assassination of public officials. In comparison with such a charge how insignificant is the accusation that he was arrested therefor and detained in jail. It would require certainly a good deal of temerity for anyone to argue to a jury that although defendants were justified in declaring in effect that plaintiff was an anarchist, he was damaged by the false publication in regard to his arrest. If this contention were made, the jury would probably conclude that such a man could not be, and was not, injured by such a comparatively trivial accusation.

Aside from the foregoing, it may be said that the jury were fully instructed that the burden of proof was upon the defendants to establish by a preponderance of the evidence the truth of the material portion of the publication, and that if they believed the publication complained of had damaged plaintiff, it was the duty of the jury to assess the same at whatever sum they might believe from the evidence he had suffered, not to exceed the sum of $10,000. The presumption would be that the jury concluded that the plaintiff was not perceptibly damaged by any portion of the publication. If plaintiff had desired an instruction that the portion of the article in question was material, he should have requested it. While we are satisfied that it constitutes a circumstance of trifling importance, yet, as the record is presented, we cannot say that the jury did not consider it material, but we must rather assume that it was found to be without damage.

Some criticism is made of the action of the court in overruling plaintiff's objection to the question asked of him on cross-examination if he was a Socialist. Whether the question should have been allowed or not need not be discussed, as it is apparent the answer could have done no harm. If he had

stated that he was a Republican or Democrat, he would have no less cause for complaint. While there may be some uncertainty in the public mind as to just what is a Republican or Democrat or Socialist, yet we apprehend that the distinctive political principles of any one of these organizations, as generally recognized, would not be urged by any fairminded man in derogation of the mentality or character of the person espousing said principles. Indeed, if we accept socialism as what its votaries declare it to be, "A theory or system of social reform which contemplates by peaceable means a reorganization of society with a more just and equitable distribution of property and labor," the average man would be impressed with its humanitarianism, although he might doubt its feasibility. At any rate, it would be a reflection upon the intelligence or sense of fairness of the jury to say that they were prejudiced against plaintiff by reason of his avowal of his connection with socialism.

Complaint is also made of the refusal of the court to allow testimony of what was said to plaintiff by others after the publication of the alleged libel. This ruling was clearly right, and is upheld by the authorities. (*Turner* v. *Hearst,* 115 Cal. 394, [47 Pac. 129]; *Hearne* v. *De Young,* 119 Cal. 670, [52 Pac. 150, 499].) Therein it is declared that such evidence is not admissible to show the mental suffering of the plaintiff, or to show that the libelous words were understood by those who read them to refer to the plaintiff. Such evidence was equally inadmissible here. It could not be received for the first purpose for reasons stated by the supreme court, nor for the second, because no such issue is made by the pleadings. In fact, there is no controversy nor uncertainty as to the person to whom the language referred.

There is no error in the instructions of the court. When considered together they seem to state the law consistently and accurately. Even if liable to the objections urged by appellant, we should have to assume that the criticised instructions were given at his request, in the absence of anything in the record to show to the contrary. But the law seems to have been stated by the learned judge as favorably to plaintiff as he had any right to expect. Assuredly there was no injury to plaintiff in the instruction that the jury might find a verdict against one of the defendants if he was

liable for the publication, although they might believe the other had no connection with it. The effect of this was manifestly to accord to plaintiff the advantage of a several liability on the part of defendants, although they were jointly charged. According to appellant's contention, the jury should have been instructed that they must find against both of the defendants or neither, while the instruction as given presented, as we have seen, the more advantageous view of a joint' and several liability. The case of *Bradley* v. *Rosenthal*, 154 Cal. 420, [129 Am. St. Rep. 171, 97 Pac. 875], is beside the mark, as here there is no question raised by the pleadings as to principal and agent.

Appellant contends that the statute requiring the plaintiff in an action for libel to file a bond and allowing a counsel fee to defendant in the event that the plaintiff fails to sustain his action is unconstitutional. But the question is hardly reviewable in this proceeding, as the record does not show that a bond was given or anything allowed for attorney's fee, it being recited in the judgment that defendants were entitled to so much for "costs and disbursements," without further specification. But assuming that the question is properly presented, it is admitted by appellant that the supreme court has upheld the constitutionality of said act. (*Smith* v. *McDermott*, 93 Cal. 421, [29 Pac. 34].) It is claimed, however, that the decision is opposed to the principle announced in *Gulf etc. Ry. Co.* v. *Ellis*, 165 U. S. 150, [17 Sup. Ct. Rep. 255]; *Building Supply Depot* v. *O'Connor*, 150 Cal. 267, [119 Am. St. Rep. 193, 88 Pac. 982]; *Union Lumber Co.* v. *Simon*, 150 Cal. 751, [89 Pac. 1077, 1081]. It will be seen, though, upon examination, that each of those cases involved an entirely different statute and conditions from what we have here.

In the Ellis case, *supra*, it was decided that "a state statute imposing an attorney's fee not to exceed ten dollars, in addition to costs upon railway corporations omitting to pay certain claims within a certain time after presentation, which applies to no other corporations or individuals, is unconstitutional as denying to them the equal protection of the laws." The act not only singled out certain corporations, but, as said by the court, "They do not enter into the courts upon equal terms. They must pay attorney's fees if wrong; they do not

recover any if right; while their adversaries recover if right and pay nothing if wrong." Therefore, it was held that they were unequal before the law.

For similar reasons in the O'Connor and Simon cases, *supra*, it was decided that the provision in the mechanic's lien law allowing an attorney's fee to the plaintiff was unconstitutional and void.

The statute before us makes no such discrimination. The fee is allowed as costs to the party that prevails in the action. Hence the parties do "enter the courts upon equal terms."

If it were contended that it is special legislation, and therefore obnoxious to the state constitution, a sufficient answer would be that it was in effect at the time the present constitution was adopted.

The record has received careful attention, but we find no prejudicial error therein.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 20, 1910.