[Civ. No. 68301. Second Dist., Div. One. Dec. 9, 1983.]

RORY FLYNN et al., Plaintiffs and Appellants, v.
CHARLES HIGHAM et al., Defendants and Respondents.

678

COUNSEL

Melvin M. Belli and Harold Selan for Plaintiffs and Appellants.

Rogers & Harris and Michael Harris for Defendants and Respondents.

## OPINION

**HANSON (Thaxton), J.**—Rory and Deirdre Flynn (hereinafter referred to as plaintiffs) appeal from the order of dismissal entered after the defendants' demurrer was sustained and the plaintiffs failed to amend their complaint. We affirm.

### PROCEDURAL BACKGROUND

On July 10, 1981, plaintiffs filed a complaint captioned defamation of character against Charles Higham (author of the book Errol Flynn the Untold Story), Dell Publishing Company (publisher of the same book) and various Does (hereinafter collectively referred to as defendants). The complaint stated that the defendants defamed the plaintiffs by writing that their deceased father was a homosexual and a Nazi spy.

Argument on defendants' demurrer to the complaint was heard on January 27, 1982, and the trial court sustained defendants' demurrer with thirty days leave to amend.

On March 23, 1982, after the plaintiffs' failure to amend their complaint, the trial court entered its order of dismissal pursuant to Code of Civil Procedure section 581, subdivision 3.

### ISSUES

On appeal, the plaintiffs contend that the trial court erred in sustaining defendants' demurrer to their complaint since they stated viable theories of recovery; namely, defamation, intentional infliction of emotional distress, and invasion of privacy.

### DISCUSSION

■ In ruling on a demurrer, the trial court should not sustain the demurrer " 'if the pleading, liberally construed, states a cause of action on any theory.' (*Covo* v. *Lobue* (1963) 220 Cal.App.2d 218, 221 [33 Cal.Rptr. 828].)" (*Brousseau* v. *Jarrett* (1977) 73 Cal.App.3d 864, 870-871 [141 Cal.Rptr. 200].) In reviewing whether the trial court abused its discretion, "[s]ince appellant has elected not to amend its complaint, a strict construction of the pleadings is required. In fact, for the purpose of this appeal at least, we must assume that it pleaded as strong a case as it can (*Vaughn* v. *Certified Life Ins. Co.*, 238 Cal.App.2d 177 [47 Cal.Rptr. 619])." (*Sierra Investment Corp.* v. *County of Sacramento* (1967) 252 Cal.App.2d 339, 341 [60 Cal.Rptr. 519].)

## A. Defamation

■ In the case at bench, all of the complained of statements in defendants' book refer to Errol Flynn's sexual and political activities and not those of the plaintiffs. "Defamation of a deceased person does not give rise to a civil right of action at common law in favor of the surviving spouse, family, or relatives, who are not themselves defamed. A libel on the memory of a deceased person is not deemed to inflict on the surviving relatives of the deceased any such legal damage as will sustain a civil action for the defamation. (*Skrocki* v. *Stahl*, 14 Cal.App. 1 [110 P. 957]; *Saucer* v. *Giroux*, 54 Cal.App. 732 [202 P. 887].) The defamatory matter must be published concerning the plaintiff." (*Kelly* v. *Johnson Publishing Co.* (1958) 160 Cal.App.2d 718, 723 [325 P.2d 659].)

Plaintiffs argue that an implied civil cause of action exists based on Penal Code section 248[1] which states: "A libel is a malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt, or ridicule."

However, the plaintiffs' contention does not find support in case law.

The court in *Saucer* v. *Giroux* (1921) 54 Cal.App. 732, 733 [202 P. 887] stated: "While the publication of malicious defamatory statements 'tending to blacken the memory of one who is dead' is made a crime (sec. 248, Pen. Code), punishable as provided in section 249 of the Penal Code, it gives rise to no cause of action in favor of a relative of such deceased for the recovery of damages."

"As a matter of sound public policy, the malicious defamation of the memory of the dead is condemned as an affront to the general sentiments of morality and decency, and the interests of society demand its punishment through the criminal courts, but the law does not contemplate the offense as causing any special damage to another individual, though related to the deceased, and, therefore, it cannot be made the basis for recovery in a civil action. This, probably, is a necessary incident to the theory of the social relations entertained here, where one is supposed to stand or fall upon his own merits and where success or failure is entirely independent of the ac-

---

[1]California's criminal libel laws were declared unconstitutional by this court in *Eberle* v. *Municipal Court* (1976) 55 Cal.App.3d 423 [127 Cal.Rptr. 594], due to an improper definition of malice.

cidents of rank or family connection. It necessarily follows that, theoretically at least, no man's success can be aided or retarded by the character of his relative. The defamation of such character, therefore, however grievous or disturbing, can afford no injury that can be measured by a pecuniary standard." (*Skrocki* v. *Stahl* (1910) 14 Cal.App. 1, 5 [110 P. 957].)

We therefore conclude that the plaintiffs failed to state a cause of action based on defamation for statements made by defendants of and concerning their deceased father.

## B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

We next turn to the issue of whether an independent cause of action can be maintained for the intentional infliction of emotional distress based on the very same acts which were insufficient to support a cause of action for defamation. We hold that it cannot.

"The elements of a prima facie case for the tort of intentional infliction of emotional distress were summarized in *Cervantez* v. *J. C. Penny Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975], as follows: '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 209 [185 Cal.Rptr. 252, 649 P.2d 894].)

In *Grimes* v. *Carter* (1966) 241 Cal.App.2d 694 [50 Cal.Rptr. 808, 19 A.L.R.3d 1310], the court was faced with the problem of whether the statutory requirement (since repealed) of posting a bond before bringing an action for defamation could be bypassed by a plaintiff who brings an action for the intentional infliction of emotional distress rather than defamation. The court, at page 702, stated: "It is elementary that, although the gravamen of a defamation action is injury to reputation, libel or slander also visits upon a plaintiff humiliation, mortification and emotional distress. In circumstances where a plaintiff states a case of libel or slander, such personal distress is a matter which may be taken into account in determining the amount of damages to which the plaintiff is entitled, but it does not give rise to an independent cause of action on the theory of a separate tort. To accede to the contentions of the plaintiff in this case would be, in the words of Prosser, a step toward 'swallowing up and engulfing the whole law of public defamation.' If plaintiff should prevail in her argument it is doubtful whether any litigant hereafter would file a slander or libel action, post an undertaking and prepare to meet substantial defenses, if she could, by sim-

ply contending that she was predicating her claim solely on emotional distress, avoid the filing of such bond and render unavailable such substantial defenses as, for example, justification by truth.''

In *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573 [131 Cal.Rptr. 592], the court dealt with the issue of whether the absolute privilege conferred by Civil Code section 47, subdivision 2, could be bypassed by a cause of action for the intentional infliction of emotional distress. The court, in disallowing a cause of action for the intentional infliction of emotional distress, states: ''To allow appellant to proceed with this cause of action would substantially defeat the purpose of the privilege enunciated in section 47. It would exalt a judicially derived cause of action (see Prosser, *Intentional Infliction of Mental Suffering: A New Tort* (1939) 37 Mich.L.Rev. 874) above clear legislative intention and operate as a severe deterrent to communications otherwise protected. Therefore, no such cause of action, based upon the defamatory nature of a communication which is itself privileged under the defamation laws, can be permitted. (See *Agostini* v. *Strycula,* 231 Cal.App.2d 804, 808 [42 Cal.Rptr. 314]; *Kachig* v. *Boothe,* 22 Cal.App.3d 626, 641 [99 Cal.Rptr. 393].)'' (*Id.,* at p. 579.)

Similarly, in the case at bench, to allow an independent cause of action for the intentional infliction of emotional distress, based on the same acts which would not support a defamation action, would allow plaintiffs to do indirectly that which they could not do directly. It would also render meaningless any defense of truth or privilege.

The plaintiffs' reliance on *Lagies* v. *Copley* (1980) 110 Cal.App.3d 958 [168 Cal.Rptr. 368] is misplaced. While it is true that the court in *Lagies* reversed the sustaining of a demurrer to a count charging a conspiracy to inflict emotional distress and affirmed the sustaining of a demurrer to a count charging slander, it is clear that the facts giving rise to the infliction of emotional distress allegation consisted of far more than defamatory words. As stated by the court: ''According to plaintiff's pleadings, defendants, standing in a position of authority over him, and for the purpose of causing him to suffer such distress, intentionally humiliated plaintiff, refused to print his stories, singled him out for denial of merit raises, demoted him, blackballed him, thus precluding other employment, published Lagies' confidential sources, thus destroying his credibility as capability for being an investigative reporter, all without just cause or provocation. Thus Lagies' pleadings charge more than mere insulting language, more than mere direction of job activities. Rather an abuse of the employer-employee relationship with the intent of damaging Lagies is the ultimate fact pleaded. These aggravated circumstances alleged by Lagies are sufficient to uphold his complaint as against defendant's general demurrer.'' (*Id.,* at p. 974.)

We therefore conclude that the plaintiffs have failed to plead facts sufficient to constitute a cause of action for the intentional infliction of emotional distress.

## C. Invasion of Privacy

■ We next turn to the issue of whether the plaintiffs have sufficiently stated a cause of action for the invasion of their privacy.

"It is well settled that the right of privacy is purely a personal one; it cannot be asserted by anyone other than the person whose privacy has been invaded, that is, plaintiff must plead and prove that *his* privacy has been invaded. (*Coverstone* v. *Davies* (1952) 38 Cal.2d 315, 322-324 [239 P.2d 876]; *Werner* v. *Times-Mirror Co.* (1961) 193 Cal.App.2d 111, 116 [14 Cal.Rptr. 208]; *James* v. *Screen Gems, Inc.* (1959) 174 Cal.App.2d 650, 653 [344 P.2ds 799]; *Kelly* v. *Johnson Publishing Co.* (1958) 160 Cal.App.2d 718, 722 [325 P.2d 659]; *Metter* v. *Los Angeles Examiner* (1939) 35 Cal.App.2d 304, 310 [95 P.2d 491]; 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 342, p. 2605.) Further, the right does not survive but dies with the person. [¶] It is clear that the publication must contain some direct reference to the plaintiff. The publication must invade the plaintiff's privacy. Where the publication was directed at another individual and referred incidentally to the plaintiff but was not directed at him, no recovery can be had. Where the plaintiff's only relation to the asserted wrong is that he is a relative of the victim of the wrongdoer, and was unwillingly brought into the limelight, no recovery can be had." (Italics in original.) (*Hendrickson* v. *California Newspapers, Inc.* (1975) 48 Cal.App.3d 59, 62 [121 Cal.Rptr. 429].)

In the case at bench, all of the complained of statements referred solely to Errol Flynn. Nothing in the complaint indicates that the plaintiffs were ever mentioned in the book. Their sole relation to this case is that their deceased father's privacy may have been invaded. Under the authorities stated above, we conclude that the plaintiffs have failed to plead facts sufficient to constitute a cause of action for the invasion of their privacy.

## Disposition

The trial court's order dismissing the plaintiffs' case is affirmed.

Spencer, P. J., and Hubbell, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 15, 1984.

---

*Assigned by the Chairperson of the Judicial Council.