Filed 12/28/21  Taylor v. David CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| ELIZABETH TAYLOR, | B307954 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.BC649025) |
| v. | |
| ALKIVIADES DAVID et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rafael A. Ongkeko, Judge.  Affirmed.

Cole & Loeterman, Dana M. Cole for Defendants and Appellants.

The Bloom Firm, Lisa Bloom, Alan Goldstein and Arick Fudali for Plaintiff and Respondent.

Appellants Hologram USA and Alkiviades David appeal from the order denying their anti-SLAPP motion to strike the allegations of the supplemental complaint filed by plaintiff Elizabeth Taylor in her action for, among others, intentional infliction of emotional distress and retaliatory conduct under the Fair Employment and Housing Act. We affirm the order because: (1) appellants have waived most of their appellate contentions both below and on appeal; and (2) as to the rest, the trial court correctly found that the misconduct alleged was either not protected activity under the anti-SLAPP law or that Taylor had shown a probability of prevailing on the merits.

## THE ANTI-SLAPP STATUTE

The anti-SLAPP statute "is intended to resolve quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest." (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 639.) Code of Civil Procedure section 425.16, subdivision (b)(1),[1] states, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Subdivision (e) of section 425.16 describes four categories of acts "in furtherance of a person's right of petition or free speech": "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the

---

[1] Hereafter "section 425.16."

exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) "If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Ibid.*)

The second step is akin to a summary judgment motion where the court does not weigh evidence or resolve conflicting factual claims. The court's inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. Claims with the requisite minimal merit may proceed.  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385 (*Baral*).)

## FACTS AND PROCEDURAL HISTORY[2]

1.    *The Supplemental Complaint*

Elizabeth Taylor sued Alkiviades David, Hologram USA, and others in 2017, alleging that David subjected her to sexual battery, intentional infliction of emotional distress, and wrongful termination and retaliatory conduct in violation of the Fair Employment and Housing Act (Gov. Code, § 12900, et seq. (FEHA).)[3]  A jury trial ended in a mistrial in 2019.  Soon after, Taylor filed a supplemental complaint geared toward her causes of action for intentional infliction of emotional distress and FEHA retaliation.

---

[2] The record on appeal does not include the original complaint or any other matters related to the first trial.  As a result, our statement of facts is derived from the trial court's register of actions, as well as from the parties' complementary descriptions of what transpired below.

[3] Taylor also sued additional defendants, but they were dismissed from the action on other grounds and are not parties to this appeal.

Taylor's supplemental complaint alleged that David "persisted in [his] retaliatory and abusive conduct" toward Taylor "even after [she] filed her original complaint in this action on February 2, 2017." Taylor alleged that "Mr. David's sadistic and retaliatory attacks against Ms. Taylor took the form of physical threats, online cyberbullying, profane outbursts and meritless cross-claims." She alleged that David engaged in the following actions:

ShockYa article: Taylor alleged that on September 19, 2017, after the court had stricken David's cross-complaint for extortion, David posted an article on his website, ShockYa.com, titled, "Extortion Ring Foiled by Hologram media mogul Alki David." The article stated that Taylor was "known for having attempted to extort money from her previous employer[.]" Taylor alleged that this statement "was false and designed to frighten and intimidate Ms. Taylor into dropping her claims."

Deposition statements: Taylor alleged that as she "sat quietly across from him at his deposition" in November 2018, David directly addressed her with insults, such as, "I don't like this fat woman. I don't want this horrible, disgusting, pimply asshole – you know, you are," "So fuck you for what you did to me," and, "You fatty, pimply, fatty, disgusting, fucking crazy person. You make me so fucking sick." Taylor alleged that these comments were "non-responsive to any deposition questions" and were "designed to frighten and intimidate Ms. Taylor into dropping her claims."

Instagram posts: Taylor alleged that on August 12, 2019, the first day of trial, David "posted a video to his 120,000 Instagram followers declaring that he had wanted to get rid of Ms. Taylor the moment he met her because she was 'mental.' In this same video, Mr. David called Ms. Taylor's attorney a 'formidable cunt.' These comments were designed to frighten and intimidate Ms. Taylor into dropping her claims." The same day, David "filmed Ms. Taylor in the courtroom hallway, in violation of court rules and without her consent, and uploaded the video to his Instagram account in order to harass and mock her." Later that day, David "posted another video to Instagram calling Ms. Taylor a 'whale.'" Taylor alleged these "comments were designed to frighten and intimidate Ms. Taylor into dropping her claims." On August 20, the evening before Taylor's second day of cross-examination, "Mr. David posted an Instagram photograph of Ms. Taylor and her counsel with blood

4

and 'X's on their faces with a bloody knife next to them with the phrase '#SLAYTHEDRAGON' underneath."

Courtroom comment: Taylor alleged that on or about August 22, 2019, "Mr. David walked over to Ms. Taylor in the gallery and told her, menacingly, 'I will bury you.' Ms. Taylor feared for her physical safety, remembering the photograph of her with the bloody knife Mr. David had posted on Instagram shortly before."[4]

Direct messages: Taylor alleged that beginning on September 16, 2019, two weeks after trial, she began receiving messages from David on Instagram under an account called "iamsebastianthebeast." The messages stated, "you'll see me but not in court, trust me. Therell be noone to help you [*sic*]," "you're simply a retarded gold digging ho," "I'm glad you have my IP address, so you can come by and suck me off," "go suck some more dick bitch," and "nobody would wanna have a baby with ya ugly ass." On November 26, 2019, "Mr. David sent Ms. Taylor a photograph of an erect male penis and said 'next time I see ya ass imma fuck you up badly.'"

Alternate Instagram accounts: In November 2019, David created fake Instagram accounts purporting to be either Taylor or "fan pages" for Taylor. On one account purporting to be Taylor, the username description stated, "I was sexually harassed and didn't report it until I was fired for never showing up to work! #MeToo." On a fan page account David posted, "What do you get when you treat people like shit, judge everyone you meet even though you're a dirty filthy whore, and make false accusations for financial gain? Elizabeth Taylor!" On the other fan page account he posted, "I'll be back, [Taylor's Instagram user name]." Taylor alleged that she was frightened by these posts.

2.     *The Anti-SLAPP Motion*

Hologram, joined by David as a self- represented litigant, filed a motion to strike the entire supplemental complaint under section 425.16 on the ground that the new pleading qualified as a SLAPP (Strategic Litigation

---

[4] In a declaration Taylor later filed, she stated that the comment was, "I'm going to bury you." The slight variation in wording is not relevant to the issues on appeal.

Against Public Participation) because David's alleged misconduct was protected First Amendment or litigation-related activity.

Initially, appellants' anti-SLAPP motion argued that David's alleged misconduct was protected pursuant to subdivisions (e)(2), (3) and (4) of section 425.16. However, when describing the applicable subdivisions, their motion in fact paraphrased subdivisions: (e)(1) (statements before a judicial proceeding or other proceeding authorized by law); (e)(3) (public forum statements in connection with an issue of public interest); and (e)(4) (any other free speech-related conduct in connection with an issue of public interest).[5]

When it came to discussing and analyzing the issues, however, the only portions of Taylor's supplemental complaint addressed by appellants were: (1) the article posted on David's ShockYa website accusing Taylor of extortion; (2) the three posts to David's Instagram account (consisting of the mid-trial videos where David filmed Taylor in the courthouse, said he had wanted to fire her right away because she was mental, and where he called her a whale); and (3) his mid-deposition barrage of insults and his courtroom statement that he would bury Taylor. As a result, appellants did not address the several direct messages allegedly sent by David on phony Instagram accounts that included a variety of threats and crude and insulting comments or the post on his Instagram account captioned #SLAYTHEDRAGON underneath photos of Taylor and her lawyer, with the letter X and blood on their faces.

In connection with the first prong under section 425.16, appellants argued that David's courtroom and deposition statements constituted protected activity because they were shielded by the litigation privilege. (Civ. Code, § 47, subd. (b).)[6] They contended that the ShockYa article and three social media video posts were free speech activity in connection with issues of public interest because the case was widely covered in the press, including media appearances and social media posts by Taylor's "celebrity" lawyer.

---

[5] As set forth below, we conclude this mistake ultimately resulted in a waiver of some of the issues raised on appeal.

[6] We discuss this in detail in section 2. of our Discussion.

6

Citing *Wilson v. Cable News Network* (2019) 7 Cal.5th 871, 892, appellants also argued that Taylor's supplemental FEHA retaliation allegations were not immune from anti-SLAPP motions even if she alleged that David's actions were undertaken with an improper motive. Notably, appellants did not contend that the supplemental FEHA retaliation allegations failed because the alleged conduct occurred long after Taylor's employment ended and therefore did not amount to an adverse employment action.

As for the second prong, appellants contended that Taylor could not show a probability of prevailing on the merits because: (1) David's conduct was protected by the litigation privilege; and (2) her supplemental allegations were effectively defamation claims and could not succeed because the statements were either opinion that was not provably false or, in the alternative were in fact true, based on Taylor's assertion that she had gained weight and suffered stress-related scarring from David's actions.

Taylor's trial court opposition argued that David's alleged statements and actions were not protected under section 425.16 because his insulting deposition comments, threat to bury her, and ShockYa extortion allegation were either not matters of public interest or were not related to substantive issues in the lawsuit. Taylor also pointed out that David's direct message threats and crude comments were sent to her only and therefore were not statements on issues of public interest.

As to the second prong of the anti-SLAPP analysis, Taylor first pointed out that appellants' litigation privilege argument had been incorrectly raised in connection with the first prong issue because that argument was instead properly considered as part of only the second prong. Taylor then argued that her supplemental allegations had the requisite level of merit to survive an anti-SLAPP challenge because: (1) the litigation privilege did not apply because none of David's alleged misconduct was geared at achieving the objects of his litigation and had no logical connection or relation to the action; (2) defamation was not the basis of her claims, which rested instead on a course of harassing conduct that included threats and vile insults; and (3) for purposes of her FEHA retaliation cause of action, the alleged misconduct was part of a continuing course of conduct that amounted to an adverse

7

employment action that could dissuade others from filing FEHA claims against appellants.

### 3. *The Trial Court's Order*

Even though appellants' motion addressed less than half of Taylor's supplemental complaint, the trial court's lengthy minute order analyzed all of David's alleged conduct and statements set forth in that complaint. It found that the following statements and social media posts attributed to David were not protected speech under section 425.16 because they constituted true threats under *D.C. v. R.R.* (2010) 182 Cal.App.4th 1190 (*D.C.*): the social media post of Taylor's and her lawyer's photographs with blood and an X on their faces, alongside a bloody knife, combined with the phrase "#slaythedragon"; David's private in-court statement to Taylor that he would bury her; his direct messages stating that she would see him out of court with no one there to help her; and the photo of an erect phallus accompanied by text stating he would "fuck [her] up badly" the next time he saw her.

The trial court next found that David's deposition remarks concerning Taylor's physical appearance; his private, direct Instagram messages; and the social media video posts where he called Taylor "mental" and a "whale" were not protected under section 425.16. The deposition remarks were made during a private deposition, were not posted on a public forum, and had no bearing on any issue that could affect large numbers of people beyond the direct participants. The threatening and insulting direct messages from manufactured Instagram accounts were not communicated to the public, were not related to the ongoing litigation, and could not affect large numbers of other people. The social media video posts were not protected by the litigation privilege and there was no public interest in David's assertions concerning Taylor's size or mental status.

The trial court concluded this portion of its order by stating: "Because the court finds that these comments do not invoke the litigation privilege and that David did not make these comments in connection with a judicial proceeding and/or in connection with an issue of public interest, David has failed to meet his burden to establish the first prong for these statements/comments."

8

The trial court found that the ShockYa website article accusing Taylor of extortion was protected, but determined that Taylor had shown a probability of prevailing on the merits of that claim because the article was a mud-slinging effort to try the case in the press and was not in furtherance of any litigation objectives, thereby taking it outside the scope of the litigation privilege.

Finally, the trial court rejected appellants' contention that Taylor's supplemental complaint failed as to her FEHA retaliation claim because she could not state a cause of action for defamation. The court found that the retaliation claim was not based on the alleged falsity of any of David's statements, that his course of conduct allegedly showed a pattern of retaliatory activity against a former employee who had brought a FEHA claim, and that the ShockYa article was merely collateral to this course of conduct.[7]

## STANDARD OF REVIEW

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park, supra*, 2 Cal.5th at p. 1067.) The appellate court therefore "'engag[es] in the same two-step process to determine, as a matter of law, whether the defendant met its initial burden of showing the action is a SLAPP, and if so, whether the plaintiff met its evidentiary burden on the second step.'" (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1162.) "If the trial court's decision is correct on any theory applicable to the case, we affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion." (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573 (*Robles*).) As in any appeal, the court's order is "presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)

---

[7] The trial court limited its analysis of this issue to the FEHA claim even though appellants raised it as to the emotional distress cause of action as well.

9

**DISCUSSION**

1.    *Waiver Of Issues Not Raised On Appeal*

As noted in section 2. of our Facts And Procedural History, appellants' anti-SLAPP motion challenged only some of the allegations of Taylor's supplemental complaint:  (1) the article posted on David's ShockYa website accusing Taylor of extortion; (2) the three posts to David's Instagram account (consisting of the mid-trial videos where David filmed Taylor in the courthouse, said he had wanted to fire her right away because she was mental, and where he called her a whale);  and (3) his mid-deposition barrage of insults and his courtroom statement that he would bury Taylor.

On appeal they have once more limited the issues to these allegations. This leaves unchallenged several other alleged statements and conduct by David that the trial court did reach:  the several direct messages allegedly sent by David on phony Instagram accounts that included a variety of threats and crude and insulting comments, and the post on his Instagram account captioned #SLAYTHE DRAGON underneath photos of Taylor and her lawyer, with the letter X and blood on their faces.  As a result, these issues are waived, and to the extent the trial court's order was based on those allegations, it is affirmed. (*Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 383 (*Orange County Water District*) [issues waived by failing to raise them on appeal]; *LA Taxi Cooperative, Inc. v. The Independent Taxi Owners Association of Los Angeles* (2015) 239 Cal.App.4th 918, 926, fn. 7 [on appellate review of order denying anti-SLAPP motion, issues first raised in appellate reply brief were waived].)

2.    *Trial Court's Reliance On The Litigation Privilege*

The litigation privilege provides an absolute privilege for, among others, statements or publications made in a judicial proceeding or other proceedings authorized by law.  (Civ. Code, § 47, subd. (b).)  The litigation privilege and section 425.16 serve similar policy interests and the former may serve as an aid when construing the latter. (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1262-1263 (*Neville*).)  Despite this partial overlap, however, matters protected by the litigation privilege do not always amount to protected activity under section 425.16, and a true litigation privilege analysis should be confined to the second step of an anti-SLAPP motion:

10

determining whether a plaintiff suing based on protected activity under section 425.16 can show a probability of prevailing on the merits. (*Robles, supra,* 181 Cal.App.4th at pp. 581-582; *Neville, supra,* at 1262-1263; *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 284.)

Appellants contend the trial court erred by relying on the litigation privilege as part of its first prong analysis in connection with David's courtroom and deposition remarks, quoting the following portion of the trial court's minute order as follows: "[b]ecause the court finds that these comments do not invoke the litigation privilege . . ., David has failed to meet his burden to establish the first prong for these statements/comments." Appellants have selectively quoted from the order, omitting the trial court's companion statement "that David did not make these comments in connection with a judicial proceeding and/or in connection with an issue of public interest, . . . ."

The language that appellants chose to omit is significant. It is a fundamental rule of appellate practice that trial court orders are presumed to be correct, that the burden is on the appellant to demonstrate error, and that all presumptions and intendments will be indulged, and all ambiguities resolved, in favor of the order. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.) In addition to mentioning the litigation privilege, the trial court found that the actions it was evaluating did not take place in connection with a judicial proceeding or concern issues of public interest. Those findings *are* part of a section 425.16 first prong analysis. When the disputed portion of the court's order is read with this missing language in place, we see at most an ambiguity concerning the court's reliance on the litigation privilege as part of its first prong analysis that we resolve in favor of affirming the order in that regard.

Further, we believe this ambiguity was caused by appellants, who argued below that the litigation privilege in fact required a finding in their favor under the first prong. We asked for and received supplemental briefing from the parties as to whether this supposed error was invited by appellants and as to whether appellants thereby forfeited their reliance on subdivision (e)(1) as it relates to David's courtroom and deposition statements.

11

Appellants contend they did not intend to mislead the court and that their reliance on the litigation privilege was proper because that called into play the same considerations involved under subdivision (e)(1) when determining  whether statements were made during a judicial proceeding. Citing to *People v. Nelson* (2016) 1 Cal.5th 513, 534, appellants contend that there was no invited error because the facts at issue and the standards employed do not differ.

We reject this contention.  First, the *Nelson* case concerned the application of constitutional issues to an evidentiary ruling and is wholly inapplicable.  Second, the argument is completely contrary to the issue raised by appellants in their opening appellate brief:  that the litigation privilege and the first prong analysis of section 425.16 are different and that the trial court erred by applying the former.

For the same reason, we hold that appellants have waived the contention that David's courtroom and deposition remarks were made in connection with judicial proceedings as that phrase applies to section 425.16, subdivision (e)(1).  Because their entire trial court argument in that regard was limited to the litigation privilege, they forfeited the issue below and may not raise it for the first time on appeal. (*Bikkina v. Mahadevan* (2015) 241 Cal.App.4th 70, 92.)

3. *Alternatively, Issues Concerning David's Courtroom Remarks Are Waived on Appeal*

Even if appellants had preserved for appeal their contentions that David's courtroom remark that he would bury Taylor was protected activity under section 425.16, subdivision (e)(1), we alternatively hold that they have waived that issue on appeal by failing to make adequate appellate arguments.

Appellants contend with minimal discussion that David's remark qualifies as a statement made before a judicial proceeding under subdivision (e)(1), stating that "[d]eposition and trial testimony are both protected activities that fall under subdivision (e)(1)."  In doing so, they have overlooked the operative provision of that section:  that the statement must be made *before* a judicial proceeding. (See *Greka Integrated, Inc. v. Lowrey* (2005) 133 Cal.App.4th 1572, 1580 [defendant's comments were protected

12

under section 425.16, subdivision (e)(1) because they occurred while *testifying at trial*].)  Taylor's supplemental complaint alleges that David made the remark after approaching Taylor while she was seated in the courtroom gallery.  We infer from her allegation that the remark was not made while David was testifying and was, in fact, a private aside directed solely at Taylor.

The assumption behind appellants' argument is that David's statement must be protected solely because it occurred in a courtroom while a trial was underway.  In doing so, they have failed to address the timing and circumstances of the alleged statement.  They have also failed to address the alleged remark in its full context, in light of the intentional infliction of emotional distress allegations of both the supplemental and original complaints.  (See *Lincoln Property Co., N.C., Inc v. Travelers Indemnity Co.* (2006) 137 Cal.App.4th 905, 916 [supplemental complaint must be in furtherance of and consistent with original complaint;  the new allegations do not state a new cause of action but are dependent on and arise out of the original complaint's causes of action].)

Appellants also assert, in a single sentence without further discussion, that David's courtroom statement was made "in connection with an issue under consideration or review by a . . . judicial body" under section 425.16, subdivision (e)(2).  They once more rely on ipso facto reasoning without analysis – because he said something about the case, it must automatically qualify under subdivision (e)(2).  The two cases they cite in this section address "true threats," not whether David's comment was in connection with a judicial proceeding.  As a result, the issue is waived.  (*Meridian Financial Service, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 701, fn. 15 [failure to adequately develop meaningful argument]; (*Orange County Water District, supra,* 14 Cal.App.5th at p. 383 [appellate court will not develop appellants' arguments for them, and issues not supported by citation to authority and cogent argument are deemed waived].)

4.    *David's August 12 Instagram Posts*

David contends that his three social media posts on August 12, 2019, are protected under subdivision (e)(3) as statements in a public forum in connection with an issue of public interest.  Publicly accessible websites such

as Instagram are public forums under section 425.16.  (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4.)  Appellants contend that David's post concerned matters of public interest because of the intense media scrutiny generated by the trial of Taylor's case in light of the #metoo movement, combined with the "celebrity" status of her lawyer, who made frequent media appearances and social media posts about the case.

However, David's Instagram videos were not about the substance of the trial or the #metoo movement.  Instead, the supplemental complaint alleges that David's August 12 Instagram posts consisted of David calling Taylor "mental" and saying he wanted to get rid of Taylor the moment he met her; a video of Taylor in the courtroom hallway that David filmed without her consent; and a video calling Taylor a "whale."  Nothing in the supplemental complaint or the anti-SLAPP motion suggests the posts contained any substantive information about the trial itself or the #metoo movement in general. To the contrary, the posts appear to consist solely of David's negative views of Taylor personally.

As our colleagues in Division Eight recently cautioned, "Agile thinkers always can create some kind of link between a statement and an issue of public concern.  All you need is a fondness for abstraction and a knowledge of popular culture."  (*Woodhill Ventures, LLC v. Yang* (2021) 68 Cal.App.5th 624, 632 (*Woodhill Ventures*).)  "This pervasive potential means there must be 'some degree of closeness between the challenged statements and the asserted public interest.'"  (*Ibid.*, quoting *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132.)  Statements are not protected under section 425.16 as connected to issues of public interest if they are "too tenuously tethered to the issues of public interest they implicate, and too remotely connected to the public conversation about those issues."  (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 140.)

The court in *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610 cautioned against interpreting the phrase "in connection with an issue of public interest" too broadly.  In determining whether certain communications about the construction of a football stadium concerned matters of public interest, the court noted that "the conversations underlying plaintiffs' action relate only to who should be responsible for the ordinary functions associated

with representing the City in the negotiations with the NFL—plaintiffs or the other entities named as the City's codefendants." (*Rand Resources, supra*, 6 Cal.5th at p. 616.) These conversations "had nothing to do with the merits of whether, how, and in what form the stadium should be built" (*id.* at p. 625), and the court found they were not protected under section 425.16, subdivision (e)(4).

The court stated, "At a sufficiently high level of generalization, any conduct can appear rationally related to a broader issue of public importance. What a court scrutinizing the nature of speech in the anti-SLAPP context must focus on is the speech at hand, rather than the prospects that such speech may conceivably have indirect consequences for an issue of public concern." (*Rand Resources, supra*, 6 Cal.5th at p. 625.) The court "reject[ed] the proposition that any connection at all—however fleeting or tangential— between the challenged conduct and an issue of public interest would suffice to satisfy the requirements of section 425.16, subdivision (e)(4)." (*Ibid.*) The court acknowledged that "who precisely represents a city in sports franchise negotiations could indeed conceivably prove a matter of public interest." (*Ibid.*) However, the defendants "failed to suggest anything more than the most attenuated connection between the identity of the City's agent and a matter of public importance," and "[t]he failure to introduce such evidence is a material deficiency since defendants bear the burden at the first stage of the anti-SLAPP analysis." (*Ibid.*)

The court in *Woodhill Ventures, supra,* 68 Cal.App.5th 624 also discussed this standard. There, "[s]elf-proclaimed celebrity jeweler Ben 'the Baller' Yang [(Yang)] threw a birthday party for his seven-year-old son. His wife, Nicolette Yang, ordered a themed cake from Big Sugar Bakeshop." (*Id.* at p. 626.) When the birthday cake arrived, the Yangs were dismayed to find that the cake did not resemble the playful "mad scientist" cake with jelly bean decorations they had envisioned; instead, the cake was decorated with realistic-looking prescription pills made of fondant. (*Ibid.*) Yang posted multiple messages about the cake on Instagram and talked about it on his podcast, accusing Big Sugar of putting "drugs" on a child's birthday cake and threatening to "cancel" the bakery. (*Id.* at p. 628.) Big Sugar sued, and Yang filed an anti-SLAPP motion on the grounds that he made his statements

about the bakery in a public forum in connection with an issue of public interest. The trial court denied the motion. (*Id.* at p. 630.)

The Court of Appeal affirmed. It rejected Yang's argument that "his statements involve an issue of public interest because they were about the dangers of 'candy confusion,' or children mistakenly eating pills they believe are candy." (*Woodhill Ventures, supra*, 68 Cal.App.5th at p. 632.) The court stated, "This form of argument is common in special motions to strike: Yang claims that, because his statements bear some connection to an issue of public significance, his statements deserve protection." (*Ibid.*) The court stated that Yang's comments were not about a topic of public interest: "Yang's statements did not discuss the danger of children confusing medications for candy. That was not Yang's point. Yang's statements did not seek public discussion of anything. They aimed to whip up a crowd for vengeful retribution." (*Id.* at pp. 632-633.)

Appellants' arguments here suffer the same shortcomings. Even assuming the trial itself and the larger #metoo movement constituted issues of public interest, the record does not suggest that David's Instagram posts discussed either of these issues. To the contrary, the posts appear to reflect no more than David's dislike of Taylor. David's opinion about Taylor does not constitute an issue of public interest, and his expressions of that opinion on Instagram were not statements made "in connection with an issue of public interest." Moreover, it makes no difference that David shared his opinion with his Instagram followers. "'[A] matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest,'" because "'[a] person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.'" (*Rand Resources, supra*, 6 Cal.5th at p. 621; see also *Woodhill Ventures, supra*, 68 Cal.App.5th at p. 633; *Bernstein v. LaBeouf* (2019) 43 Cal.App.5th 15, 24 (*Bernstein*).)

Appellants also argue that that the case involved a public figure, Taylor's attorney, Lisa Bloom. They assert, "Regardless of whether [Taylor] was a 'person in the public eye' for purposes of the 'public issue' analysis, David presented ample evidence that her attorney, Lisa Bloom, was 'in the public eye'" due to her "strong media presence." Taylor correctly points out

16

that David's comments about Bloom do not serve as the basis for her supplemental claims against appellants.

"[A] claim may be struck [under section 425.16] only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra,* 2 Cal.5th at p. 1060.)  Here, Taylor's supplemental complaint aided her causes of action for retaliation against her in violation of FEHA and intentional infliction of emotional distress; comments about Bloom were not the basis of Taylor's claims.  Moreover, courts have rejected the "broad proposition that anything said or written about a public figure or limited public figure in a public forum involves a public issue."  (*D.C., supra,* 182 Cal.App.4th at p. 1226; see also *Bernstein, supra,* 43 Cal.App.5th at p. 23; *Yeager v. Holt* (2018) 23 Cal.App.5th 450, 458.)

Accordingly, we hold that David's Instagram video posts were not protected under section 425.16.

5.      *Taylor Has Shown A Probability of Prevailing On The Merits As To The ShockYa Extortion Article*

The trial court found that the ShockYa web article accusing Taylor of extortion was protected speech under section 425.16.  Appellants contend Taylor cannot show a probability of prevailing on the merits of her claims because her allegations are a stand-in for a defamation claim, a cause of action that she cannot state.

Although appellants argued this point in more detail below, on appeal they cite only one case to support their contention:  *Flynn v. Higham* (1983) 149 Cal.App.3d 677 (*Flynn*).  The plaintiffs in that case were the heirs of the late actor Errol Flynn.  They sued the author of a Flynn biography for defamation and intentional infliction of emotional distress because the book accused Flynn of being gay and a Nazi spy.  The *Flynn* court affirmed the trial court order granting defendant's demurrer to the complaint, holding that the law did not recognize a defamation claim for surviving family members of the allegedly defamed person.  (*Id.* at p. 680.)  Because the defamation claim failed, the plaintiffs could not then state a cause of action for intentional infliction of emotional distress based on the same conduct. (*Id.* at p. 682.)

17

We reject appellants' reliance on *Flynn*. First, they do not discuss the elements of a defamation cause of action or how Taylor might have come up short in that regard. Second, they have failed to adequately discuss and analyze *Flynn*. The *Flynn* court distinguished its facts from *Lagies v. Copley* (1980) 110 Cal.App.3d 958 (*Lagies*), where the plaintiff sued his former employer for defamation and intentional infliction of emotional distress. The plaintiff in *Lagies* suffered a long series of intentional harassing, demeaning, improper, and tortious acts. (*Lagies, supra,* at 970-971.) The *Lagies* court held that the plaintiff's emotional distress claim charged more than just insulting language: instead, it alleged an abuse of the employer-employee relationship with the intent to damage the plaintiff. (*Id.* at p. 974.) The *Flynn* court held that the facts in *Lagies* "giving rise to the infliction of emotional distress allegation consisted of far more than defamatory words." (*Flynn, supra,* 149 Cal.App.3d at p. 682.)

The allegations here are far more like *Lagies* than *Flynn*. Taylor alleged intentional infliction of emotional distress and FEHA retaliation based on an extended pattern of harassment aimed at her personally. Her supplemental complaint does not focus on the allegedly defamatory statements in the ShockYa article, and her alleged injuries are not based on any concerns about damage to her reputation. Appellants offer no further basis on appeal for their contention that Taylor's claim should be construed as defamation. As a result, they have not met their burden to demonstrate that the trial court erred in holding that under the second step of the anti-SLAPP analysis Taylor demonstrated a probability of success on her intentional infliction of emotional distress claim.

6.      *Taylor's FEHA Retaliation Claim*

Taylor's FEHA retaliation claim is based on Government Code section 12940, subdivision (h), which makes it unlawful to "discriminate against any person" because that person opposed any conduct proscribed by FEHA, filed a FEHA complaint, or testified or assisted in any FEHA proceeding.

Appellants contend that Taylor cannot prevail on the merits of that claim because the conduct alleged occurred long after she left their employ and therefore cannot be considered adverse employment actions. (See *McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 299 [FEHA plaintiff

18

must show an adverse employment action occurred].)  Taylor contends that FEHA can be broadly construed to cover David's alleged post-termination conduct as part of a continuing course of harassment designed to intimidate her and others who might complain about David's workplace behavior.

Appellants did not raise this issue in the trial court.  Instead, it was Taylor who raised it in her trial court opposition brief.  Appellants' trial court reply addressed the issue only in passing, but in a far more limited fashion than they do on appeal.  They instead merely contended that the allegations of the supplemental complaint were insufficient because Taylor testified that she had not become regularly employed after her termination because she was not ready to do so.  That is far different from, and far short of their appellate contention that Taylor cannot prevail on her FEHA claim because the alleged conduct occurred after her termination.  As a result, the issue is forfeited.

## DISPOSITION

For the reasons set forth above the order denying appellants' anti-SLAPP motion is affirmed.  Respondent shall recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MICON, J.[*]

MANELLA, P. J.

WILLHITE, J.

[*]Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19