Filed 12/4/24

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GERALD LOUIS CLYMER, JR.,<br><br>    Defendant and Appellant. | A166279<br><br>(San Mateo County<br>Super. Ct. No.<br>19SF003118A) |

Defendant Gerald Louis Clymer, Jr. pled no contest to possession of diazepam for sale.  On appeal, he challenges the trial court's partial denial of a motion to quash and suppress evidence obtained from searches of electronic devices.  The first was a warrantless search of electronic devices used by an individual who purchased drugs from defendant and who died prior to the search.  The second was a search pursuant to a warrant of defendant's own cell phone.  We affirm.

## I.    BACKGROUND

In January 2019, Officer Anthony Baron responded to a call at the McKay family residence where he found 30-year-old Drew McKay dead in his bedroom.  Family members told Baron that for the past 12 years McKay had had a history of substance abuse and had twice overdosed on what was

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II. B.

1

suspected to have been counterfeit oxycodone. They also told Officer Baron McKay had been ill the prior afternoon, exhibiting symptoms consistent with an overdose, including low energy, clamminess, and vomiting. McKay's mother had found him dead, and the family called the police.

With McKay's parents' permission, Officer Baron and Special Agent Jeffrey Boyce searched McKay's room for narcotics and paraphernalia. They eventually found nine pills in McKay's belongings. McKay's cell phone and iPad were on a bedside table.

McKay's parents repeatedly urged Special Agent Boyce to search McKay's iPhone and iPad so the officer could "find out what happened to their son," and they provided the passcode to the devices.

While searching the devices, Special Agent Boyce found messages relating to drug sales between McKay and someone named " 'Justin Work,' " who was later determined to be defendant. These messages dated back to May or June of 2018 and included a message sent to McKay the day before his death that defendant would sell McKay 10 noncoated oxycodone pills. It appeared to Boyce that McKay had used some of the pills, as there was an outgoing message from McKay saying, " 'Oh, yeah, these work wonders. Thank you, good sir.' "[1]

Two days later, posing as McKay and using McKay's iPad, Special Agent Boyce sent messages to defendant, who was unaware of McKay's death, arranging to buy more oxycodone pills. Officers then watched defendant retrieve money left in the McKay family home mailbox for the drug buy.

---

[1] Toxicology tests and an autopsy later revealed McKay did not have opiates in his system at the time of his death and died of cardiac insufficiency.

The following day, Special Agent Boyce obtained a search warrant for defendant's home, car and cell phone for information related to drug sales. In addition to text messages and e-mails, the warrant sought "[a]pplication data" from "social media applications such as Instagram, Facebook, WhatsApp, SnapChat, and other applications that are capable of communicating without utilizing carrier based messaging services such as SMS or MMS." The information sought was "not limited to a specific time period."

The next day, officers detained defendant after he put the purportedly purchased oxycodone pills in the McKay family home mailbox. After requesting to see a copy of the search warrant, defendant allowed Special Agent Boyce to review the text messages between him and McKay.

Defendant was charged with transportation of oxycodone for sale (Health & Saf. Code, § 11352, subd. (a)); possession of oxycodone for sale (*id*., § 11351); and possession of diazepam for sale (*id*., § 11375, subd. (b)(1)).

Defendant moved to quash the search warrant and suppress the evidence obtained during the warrantless search of McKay's devices and the warrant search of his own phone. The trial court granted the motion in part, ruling the search warrant for defendant's cell phone was overbroad to the extent it authorized a search for information prior to May 2018 (the time frame of the earliest messaging between McKay and defendant).

Defendant subsequently pled no contest to possession of diazepam for sale and was placed on two years' supervised probation.

## II.  DISCUSSION[2]

### A. Search of McKay's Devices

Defendant claims the search of McKay's devices violated the California Electronic Communications Privacy Act (CalECPA) (Pen. Code, § 1546 et seq.)[3] and therefore the evidence obtained through those searches should have been suppressed.

### CalECPA

" 'Prior to passage of CalECPA, California law did not require law enforcement officials to obtain a warrant to access most electronic information.  Proponents of CalECPA sought to update the law for "the digital age" and "properly safeguard the robust constitutional privacy and free speech rights of Californians, spur innovation, and support public safety by instituting clear warrant standards for government access to electronic information."  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 178 (2015–2016 Reg. Sess.) as amended Mar. 16, 2015; see also Freiwald, *At the Privacy Vanguard: California's Electronic Communications Privacy Act (CalECPA)* (2018) 33 Berkeley Tech. L.J. 131, 143–147.)' "  (*People v. Campos* (2024) 98 Cal.App.5th 1281, 1291 (*Campos*), quoting *People v. Meza* (2023) 90 Cal.App.5th 520, 545, fn. 15 (*Meza*).)

CalECPA generally prohibits government entities from accessing electronic information without a warrant except in specified contexts.

---

[2] Our standard of review on appeal is well established: "In reviewing the trial court's denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling, deferring to those express or implied findings of fact supported by substantial evidence.  [Citations.]  We independently review the trial court's application of the law to the facts."  (*People v. Jenkins* (2000) 22 Cal.4th 900, 969.)

[3] All undesignated statutory references are to the Penal Code.

4

(§ 1546.1, subds. (a)–(c).) As relevant here, a government entity may access electronic information without a warrant "[w]ith the specific consent of the authorized possessor of the device" or when the entity "in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires access to the electronic device information." (*Id.*, subd. (c)(4), (c)(6).) An " '[a]uthorized possessor' " is defined as the "possessor of an electronic device when that person is the owner of the device or has been authorized to possess the device by the owner of the device." (§ 1546, subd. (b).)

"Section 1546.4 specifies remedies for CalECPA violations. (§ 1546.4, subds. (a)–(c).) As pertinent, the statute provides: 'Any person in a trial, hearing, or proceeding may move to suppress any electronic information obtained or retained in violation of the Fourth Amendment . . . or of this chapter [(CalECPA; §§ 1546–1546.4)]. The motion shall be made, determined, and be subject to review in accordance with the procedures set forth in subdivisions (b) through (q), inclusive of Section 1538.5.' (§ 1546.4, subd. (a).)" (*Price v. Superior Court* (2023) 93 Cal.App.5th 13, 58 (*Price*).)

As the court explained in *Price,* "[t]he statute does not require the suppression of any electronic information. Rather, it *authorizes* any person in a trial, hearing, or proceeding to *move to suppress* any electronic information obtained or retained in violation of the Fourth Amendment or CalECPA. (§ 1546.4, subd. (a).) Its only directive is that the motion 'be made, determined, and be subject to review' in accordance with the procedures set forth in section 1538.5, subdivisions (b) through (q)—the procedures governing suppression motions in criminal proceedings. (§ 1538.5.)" (*Price, supra,* 93 Cal.App.5th at p. 58; accord, *Campos, supra,* 98 Cal.App.5th at p. 1295.)

Moreover, interpreting section 1546.4, subdivision (a), as mandating suppression of any electronic information obtained or retained in violation of CalECPA would "be inconsistent with the plain language of similar CalECPA provisions," specifically, "subdivisions (b) and (c) of section 1546.4." (*Price, supra,* 93 Cal.App.5th at p. 58.) "Subdivision (b) authorizes the Attorney General to bring a civil action to compel a government entity to comply with CalECPA. Subdivision (c) authorizes, '[a]n individual whose information is targeted by a warrant, order, or other legal process that is inconsistent with [CalECPA], or the California Constitution or the United States Constitution,' or 'any other recipient of the warrant, order, or other legal process,' to 'petition the issuing court to void or modify the warrant, order, or process, or to order the destruction of any information obtained in violation of [CalECPA], or the California Constitution, or the United States Constitution.' (§ 1546.4, subd. (c).)" (*Price,* at pp. 58–59.) "Subdivisions (a), (b), and (c) of section 1546.4 are in pari materia—they each deal with electronic evidence obtained or retained in violation of CalECPA. Thus, they should be construed consistently with each other and according to their terms. [Citation.] . . . None of these provisions direct a court to impose a particular remedy for a CalECPA violation; they leave the determination of the appropriate remedy to the court considering the suppression motion, civil action, or petition alleging the CalECPA violation." (*Id.* at p. 59.)

In short, "[b]y *authorizing* the suppression of electronic evidence based on a CalECPA violation, section 1546.4, subdivision (a), *authorizes* the suppression of evidence to an extent not required by the federal Constitution. But nothing in CalECPA *require*s the suppression of electronic information in

6

a criminal proceeding."[4] (*Price, supra,* 93 Cal.App.5th at pp. 59–60; accord, *Campos, supra,* 98 Cal.App.5th at p. 1296 [while CalECPA "provides for a motion to suppress," the Act "does not require suppression with all violations"].)

*Price* also held CalECPA does not eliminate the good faith exception to the exclusionary rule. The Act contains no language, said the appellate court, that "overrides the good faith exception by requiring the suppression of the electronic evidence obtained or retained in violation of CalECPA. . . . Subdivision (a) does not mention the good faith exception or prohibit its application to CalECPA violations. (§ 1546.4, subd (a).)" (*Price, supra,* 93 Cal.App.5th at p. 60.) Thus, there is no indication " 'the Legislature intended such a sweeping change to this well-established rule without express clarity. The Legislature is presumed to know existing law, including case law [citation], and nothing in CalECPA suggests that the legislation intended to vitiate' " this rule. (*Ibid.*)

*Price* did not discuss the holding in *People v. Jackson* (2005) 129 Cal.App.4th 129, 152–160 (*Jackson*) that the good faith exception is inapplicable in determining whether evidence obtained in violation of federal and state wiretap laws should be suppressed. Instead, *Jackson* established a three-fold inquiry to determine whether evidence obtained in violation of the wiretap laws should be suppressed: "(1) Has the defendant established a violation of a provision of the wiretap law? If not, the motion is denied. (2) If

---

[4]  Because CalECPA was enacted by more than a two-thirds vote of each house of the Legislature, it is "excepted from the right to truth-in-evidence provision of the California Constitution (Cal. Const., art. I, § 28, subd. (f)(2))" which "prohibits the suppression of relevant evidence in a criminal proceeding to an extent not compelled by the federal Constitution unless the exclusion is authorized by a statute enacted by two-thirds supermajorities in both houses of the Legislature." (*Price, supra,* 93 Cal.App.5th at p. 59.)

a wiretap violation has been established was the provision violated one which 'was intended to play a central role in the statutory scheme[?]' If the provision was not intended to 'play a central role,' failing to comply with it will not render interceptions under the wiretap order unlawful and the motion is denied. (3) If the provision violated was central to the legislative scheme was the purpose of the provision achieved in spite of the error? If the purpose was achieved, the motion is denied. If the purpose was not achieved, the motion is granted." (*Id.* at p. 149, fns. omitted.)

*Price* did, however, proceed to apply this three-prong rubric to a violation of the CalECPA notice provisions, concluding the violations at issue did not undercut the purpose of the statutory notice provisions. (*Price, supra,* 93 Cal.App.5th at p. 62.)

As we shall explain, we need not weigh in on whether *Price's* and *Jackson's* holdings as to the applicability of the good faith exception are in conflict. We observe, however, that when Senate Bill No. 178 (2015–2016 Reg. Sess.) was first introduced, section 1546.4, subdivision (a) provided that " 'no evidence obtained or retained in violation of this chapter shall be admissible in a criminal . . . proceeding.' " (*Campos, supra*, 98 Cal.App.5th at p. 1295; Sen. Com. on Public Safety, Analysis of Sen. Bill No. 178 (2015–2016 Reg. Sess.) Mar. 23, 2015.) "According to a report from the Assembly Committee on Public Safety, the California State Sheriffs' Association" expressed concern about the " 'breadth of the exclusionary provisions of proposed section 1546.4,' " and took the position " '[t]echnical violations' " of the proposed CalECPA that " 'do not implicate a person's right to privacy should not result in the suppression of evidence.' " (*Campos*, at p. 1296; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 178 (2015–2016 Reg. Sess.) July 14, 2015.) Rather, the Association maintained the standards for

8

admission of evidence should be "based on a motion to suppress under Penal Code section 1538.5 and . . . violations of the Fourth Amendment." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 178 (2015–2016 Reg. Sess.) July 14, 2015.)

Senate Bill No. 178 (2015–2016 Reg. Sess.) was thereafter amended and the text of section 1546.4, subdivision (a), changed to read an individual alleging a CalECPA violation may move to suppress evidence obtained " 'in violation of the Fourth Amendment . . . or of this chapter' " and further providing such a motion should be " 'made, determined, and be subject to review in accordance with the procedures set forth in subdivisions (b) to (q), inclusive, of Section 1538.5.' " (*Campos, supra*, 98 Cal.App.5th at p. 1296.) This amendment, then, "evinces a rejection of the proposal to exclude *all* evidence obtained in violation of the CalECPA." (*Ibid*.) While *Campos* concluded this legislative history buttresses the conclusion CalECPA does not require suppression for any violation of the Act, the amendment, by expressly referencing the Fourth Amendment, also arguably suggests the principles enunciated in Fourth Amendment jurisprudence, including the good faith exception to the exclusionary rule, remain operative under CalECPA.

### *No Violation of CalECPA*

Defendant contends the search of McKay's devices was not permissible under CalECPA either as a search undertaken "[w]ith the specific consent of the authorized possessor of the device" (§ 1546.1, subd. (c)(4)) or with a "good faith" belief that "an emergency involving danger of death or serious physical injury to any person require[d] access to the electronic device information." (*Id*., subd. (c)(6).)

As we have recited, section 1546 defines " '[a]uthorized possessor' " as the "possessor of an electronic device when that person is the owner of the

9

device or has been authorized to possess the device by the owner of the device." (§ 1546, subd. (b).) Neither section 1546, subdivision (b), nor any other provision of CalECPA addresses who becomes an "authorized possessor" of a device when the owner dies.

We conclude under the circumstances that occurred here, McKay's parents became, at the relevant time, "authorized possessors" of McKay's devices. To begin with, defendant has never claimed McKay was not the owner of the devices. It is also undisputed McKay lived with his parents in the family residence and occupied a bedroom there. Upon his death, McKay, of course, was no longer the corporal owner or possessor of the devices. And since it is also undisputed McKay died in his bedroom in the family residence and the devices were on a nightstand next to his bed, the only persons who then actually possessed, and could possess, the devices at the relevant time, were his parents. Furthermore, McKay's parents not only had uncontested physical possession of the devices at the relevant time, but they also knew the passcodes and therefore could access the devices. In short, on McKay's death, there were no "authorized possessors" of the devices other than his parents. (See *In re Scott K.* (1979) 24 Cal.3d 395, 404 (*In re Scott K.*) [under Fourth Amendment principles, "[v]alid consent may come from the sole owner of property or from 'a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected,' " quoting *United States v. Matlock* (1974) 415 U.S. 164, 171].) Indeed, as the Attorney General points out, the trial court could reasonably conclude, given the totality of the circumstances, McKay, himself, had authorized his parents to access his devices and they could therefore consent to their search.

Our conclusion is also wholly consistent with the fundamental purpose

10

of CalECPA, which is to protect the privacy interests of owners and authorized users in their electronic devices and electronic information. (See *Price, supra*, 93 Cal.App.5th at p. 62.) However, McKay's privacy interest in his devices was extinguished upon his death. " 'It is well settled that the right of privacy is purely a personal one; it cannot be asserted by anyone other than the person whose privacy has been invaded. [Citations.] Further, the right does not survive but dies with the person.' " (*Flynn v. Higham* (1983) 149 Cal.App.3d 677, 683; *Hendrickson v. California Newspapers, Inc.* (1975) 48 Cal.App.3d 59, 62 [same].) Thus, we fail to see how the search of a decedent's electronic devices can be at odds with CalECPA, particularly where, as here, the persons who are properly in possession of the decedent's devices at the relevant time, as were McKay's parents, authorize a search of the devices and supply the passcodes to do so.

The parental-consent cases on which defendant relies are readily distinguishable. For example, in *In re Scott K.,* our Supreme Court held officers could not reasonably rely on a father's consent to search his son's locked toolbox where the father "claimed no interest in the box or its contents. He acknowledged that the son was owner, and the son did not consent to the search." (*In re Scott K., supra,* 24 Cal.3d at pp. 404–405.) In *People v. Daniels* (1971) 16 Cal.App.3d 36, 45, the Court of Appeal held that while a mother could consent to a search of her adult son's bedroom and all the furniture in it, she could not consent to a search of his closed suitcase that was in a corner of the bedroom and "over which the mother had no actual control." Thus, neither case dealt with a situation comparable to that here, where parents consented to the search of a deceased child's electronic devices which were in the family home where the child had resided and where he had died, and to which the parents possessed the passcodes and had

11

full access.

Given our conclusion the trial court was on solid ground in finding McKay's parents were "authorized possessors" of McKay's devices, who could, and did, consent to their search, we need not and do not address whether CalECPA's exigent circumstances provision also applied. Nor do we reach the Attorney General's alternative, harmless error arguments.

## B. Search of Defendant's Own Cell Phone

Defendant challenges the search of his own cell phone on two grounds.

First, he complains it was only because of the purportedly unlawful search of McKay's devices that officers procured a warrant and searched his own cell phone. However, as we have explained, the search of McKay's devices was not unlawful.

Second, he maintains the search violated both the Fourth Amendment and CalECPA because the warrant was overbroad and insufficiently particular. He asserts the warrant "failed to specify not only time periods but also the applications subject to search" and "essentially authorized a general search of appellant's phone." In other words, he contends the trial court's partial grant of his motion, suppressing any electronic information obtained from his phone predating May 2018, was insufficient to cure the warrant's alleged infirmities and therefore all evidence obtained pursuant to the search should have been suppressed.

The Fourth Amendment provides "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend.) CalECPA similarly requires a warrant to "describe with particularity the information to be seized by specifying, as appropriate and reasonable, the time periods covered, the target individuals or accounts, [and]

12

the applications or services covered. . . ." (§ 1546.1, subd. (d)(1).)

As the court explained in *Meza, supra,* 90 Cal.App.5th at page 537, the " 'purpose of the "particularity" requirement of the Fourth Amendment is to avoid general and exploratory searches by requiring a particular description of the items to be seized.' (*People v. Bradford* (1997) 15 Cal.4th 1229, 1296. . . .) 'However, a warrant "need only be reasonably specific" [citation], and the "specificity required 'varies depending on the circumstances of the case and the type of items involved.' " ' (*People v. Robinson* [(2010)] 47 Cal.4th [1104,] 1132 ['particularity "is a flexible concept, reflecting the degree of detail available from the facts known to the affiant and presented to the issuing magistrate" '].) ' "[T]his requirement is held to be satisfied if the warrant imposes a meaningful restriction upon the objects to be seized." ' (*People v. Frank* (1985) 38 Cal.3d 711, 724. . . .) In other words, '[t]he description in a search warrant must be sufficiently definite that the officer conducting the search "can with reasonable effort ascertain and identify the place intended." [Citation.] Nothing should be left to the discretion of the officer.' (*People v. Dumas* (1973) 9 Cal.3d 871, 880 . . . ; see also [*United States*] *v. Blakeney* (4th Cir. 2020) 949 F.3d 851, 863 [warrants met particularity requirement where they 'describe the items to be seized with enough particularity to constrain the discretion of the executing officers and prevent a general search']; ][*United States*] *v. Collins* (9th Cir. 1987) 830 F.2d 145, 145–146 [warrant not sufficiently particular where it contained an incorrect address and imprecise description, resulting in search of the wrong house].)"

The search warrant here authorized a search of 11 different categories of electronic information, ranging from "[d]ata that may identify the owner or user" of the device, to "[a]ddress books and calendars," "[a]udio and video

clips and associated metadata," "[c]all histories and call logs,"
"[p]hotographs," "[t]ext messages," "[e]-mail messages and attachments," web
browser files, GPS data, "[d]ocuments and other text based files," and
"[a]pplication data including, but not limited to social media applications
such as Instagram, Facebook, WhatsApp, SnapChat, and other applications
that are capable of communicating without utilizing carrier based messaging
services such as SMS or MMS."

Defendant maintains this is "the kind of 'boilerplate list[] routinely
incorporated into the warrant without regard to the evidence' " and therefore
unsupported by probable cause. However, the 19-page affidavit supporting
the search warrant provided sufficient explanation and justification for
searches of the enumerated categories.

Special Agent Boyce stated he believed, based on the evidence of
McKay's purchases and Boyce's own buy, that defendant "has sold and is
currently selling narcotics including oxycodone pills," in violation of state law.
Boyce then explained why a search of defendant's residence, car, and cell
phone would "yield evidence that [defendant] is in possession of oxycodone
pills for sale." For example, Boyce explained that based on his extensive
experience in drug cases, he knows those selling illegal drugs keep
documentation concerning their suppliers, their distribution network,
purchasers, and the details of drug transactions, and that "modern-day
narcotics traffickers frequently store records such as these electronically in
cell phones." He further stated, based on his experience, he knows "modern
cellular communication devices very often possess data processing and data
storage capabilities that were previously only found in computers. . . . Most
of these devices now provide[] Internet web browsers, instant messaging
capabilities, chat programs, and even e-mail access capabilities. These

devices are capable of storing address books and calendars containing a person's personal and business contacts. . . ." Based on defendant's text messages with McKay, Boyce believed, "electronic devices located in [defendant's] possession would contain evidence showing the duration of time that [defendant] has been selling narcotics, and highlight the amounts he has sold, and the number of customers he sells to."

As for defendant's specific complaint the search warrant violated CalECPA because it did not identify particular applications for search, the warrant identified "[a]pplication data" as "including, but not limited to social media applications such as Instagram, Facebook, WhatsApp, SnapChat, and other applications that are capable of communicating without utilizing carrier based messaging services such as SMS or MMS." Thus, the warrant did not permit a search of "all" apps on defendant's phone but was confined to apps that fall within the rubric of social media apps.

Defendant relies on the court's observation in *Meza* that "CalECPA does not define 'applications and services' and [the defendants] have not explained what they believe it means, what particular information they contend should have been included in the warrant, or how the warrant was ambiguous absent such unspecified information. The commonsense meaning of the statute appears to be that, when law enforcement seeks to recover the content of electronic communications, such as e-mails or text messages, the warrant must specify, as appropriate and reasonable, the particular mail or text message applications and services from which law enforcement seeks to retrieve information." (*Meza, supra,* 90 Cal.App.5th at p. 546.) The court went on to state that "[w]ith a geofence warrant, however, the government is not seeking data or content related to a particular application or service. Rather, what is sought is the service provider's record of all electronic contact

15

with that device, regardless of which applications or services originated the contact. Accordingly, the failure to name a particular application or service in this instance does not result in a violation of CalECPA." (*Ibid.*) Thus, the language in *Meza* on which defendant relies is dicta unconnected to the circumstances of any particular case.

As the Attorney General points out, CalECPA requires a warrant to specify "as appropriate and reasonable" the applications or services covered. (§ 1546.1, subd. (d)(1); see, e.g., *Price, supra,* 93 Cal.App.5th at p. 53 ["[N]ot every warrant for electronic information must describe the information it seeks in terms of each of the four categories of information listed in the statute. The warrant is only required to include such descriptions 'as appropriate and reasonable.' "].)

Here, the warrant specified the more common social media applications with messaging capabilities. Without having seen defendant's phone, this was the greatest degree of particularity available to the investigators. (See *Meza, supra,* 90 Cal.App.5th at pp. 541, 545 [geofence warrant directing Google to identify individuals whose location history data indicated they were in the vicinity of locations visited by murder victim did not violate CalECPA by failing to describe target individuals and accounts because this was the "greatest degree of particularity available to investigators"].)

Even if the warrant was not sufficiently particular in any respect besides time (which the trial court addressed by suppressing evidence predating May 2018), we agree with the Attorney General that failure to suppress the evidence procured through the search was harmless. Defendant's only response on this issue is to assert that because the search of McKay's devices was also unlawful, "there was no evidence to support the charges" against him. However, since we have concluded the search of

16

McKay's devices was lawful, there was ample evidence to support the charges and therefore any error in connection with the suppression motion was harmless, whether considered under the *Chapman* or *Watson* standard.  (See *Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## III.   DISPOSITION

The judgment is affirmed.

 

 

 

 

                               _____

                               Banke, J.

We concur:

_____

Humes, P.J.

_____

Langhorne Wilson, J.

A166279, People v. Clymer

Trial Court:    San Mateo County Superior Court

Trial Judge:    Hon. Sean Dabel

Counsel:

Rob Bonta, Attorney General, Lane E. Winters, Chief Assistant Attorney General, Jeffery M. Laurence, Senior Assistant Attorney General, Donna M. Provenzano, Supervising Deputy Attorney, Kelly Anne Styger, Deputy Attorney General, for Plaintiff and Respondent.

Law Offices of Marsanne Weese, Marsanne A. Weese and Rose Mishaan, for Defendant and Appellant.